FILED

DANIEL G. BOGDEN
United States Attorney
J. GREGORY DAMM
CRANE M. POMERANTZ
Assistant United States Attorneys
333 Las Vegas Boulevard South
Fifth Floor
Las Vegas, Nevada 89101
(702) 388-6336
Fax: (702) 388-5087

2012 JUN 28 PM 3: 37

U.S. MAGISTRATE JUDGE
BY_____

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
## -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAMON DESAGE,<br>aka RAMON ABI-RACHED, aka,<br>RAYMOND ANTOINE ABI-RACHED,<br><br>Defendant. | Case No:  2:12-mj-441-PAL<br><br>Criminal Complaint |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned complainant, being first duly sworn, deposes and says:

1.    From on or about May 19, 2005, and continuing up to the present date, in the State and Federal District of Nevada,

## RAMON DESAGE,

### aka RAMON ABI-RACHED, aka RAYMOND ANTOINE ABI-RACHED,

defendant herein, did devise, intend to devise, and participate in a scheme and artifice to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations and promises, which scheme and artifice involved fraudulently obtaining money

from investors by falsely claiming that the money they provided would be used for business purposes when, in fact, **Desage** used the money to pay back other investors, pay off casino debts and otherwise enrich himself.

2.      The object of the scheme and artifice was to fraudulently obtain money from investors.

3.      For the purpose of executing the scheme and artifice to defraud, and attempting to do so, on or about the dates set forth below,

RAMON DESAGE, aka

RAMON ABI-RACHED, aka RAYMOND ANTOINE ABI-RACHED,

defendant herein, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and pictures, that is, on the dates set forth below, defendant **Desage** sent and received the following communications described below, from the individuals and locations described below, with each wire transmission constituting a separate violation of Title 18, United States Code, Section 1343:

| Counts | Date | Description of Wire |
|--------|------|---------------------|
| 1 | 1/15/2010 | $200,000 wire transfer from Cadeau Express account # xxxxxx6157 at Bank of Nevada to the Hard Rock Casino |
| 2 | 3/2/2009 | $2,650,000 wire transfer from Investor #2 to Cadeau Express account # xxxxxx6157 at Bank of Nevada |
| 3 | 1/15/2010 | $1,750,000 wire transfer from Investor #3 to Cadeau Express account # xxxxxx6157 at Bank of Nevada |
| 4 | 8/11/2011 | $1,700,000 wire transfer from Investor #4 to Beryt account # xxxxxx6157 at Bank of Nevada |

2

### Probable Cause

**A.     Background**

Complainant, as a Special Agent for the Internal Revenue Service - Criminal Investigation, states the following as and for probable cause:

1.     Your Affiant is a Special Agent with the Internal Revenue Service- Criminal Investigation (IRS-CI), currently assigned to the Las Vegas, Nevada field office.  I have been employed as a Special Agent with IRS-CI since August 1996.

2.     I have investigated numerous complex money laundering, tax evasion, mail fraud, and wire fraud cases.  I am familiar with the information contained in this affidavit based on personal investigation and on information provided by other law enforcement officers.

3.     The statements contained in this affidavit are based on information provided by employees of the IRS-CI, cooperating witnesses, other law enforcement officials and on my experience and background as a Special Agent with IRS-CI.  I have not included each and every fact known to me concerning this investigation.  Rather, I have set forth only the facts that I believe are necessary to establish probable cause to believe that violations of Title 18, United States Code, Section 1343-Wire Fraud have occurred in the State and Federal District of Nevada.

**B.     Overview**

4.     This affidavit is made in support of an application for the issuance of an arrest warrant for Ramon DESAGE and results from the investigation of DESAGE by IRS-CI.  Your affiant's investigation to date has revealed that DESAGE is engaged in an elaborate "Ponzi" scheme in which he has fraudulently solicited and received tens of millions of dollars from investors. DESAGE falsely represented to each investor that he intends to use their investment to purchase products for resale at a substantial profit.  Instead of using these investments for legitimate business investments, as promised, DESAGE has largely used the investors' money to repay earlier investors, to cover gambling losses and to purchase luxury personal items for himself and others. DESAGE lulls

3

investors and convinces them to make additional, and more lucrative investments, by making small periodic payments to them, but he never pays them back in full and never pays the rate of return he initially promised.  Since 2005, DESAGE has obtained approximately $150 million from investors and currently owes his investors in excess of $75 million.

        **C.**     **Ramon Desage**

     5.     DESAGE is a native of Lebanon who became a United States citizen in the mid-1980's.  Since that time, he has resided in California and Las Vegas, Nevada.  Desage has always maintained his original Lebanese citizenship.

     6.     DESAGE maintains strong ties to Lebanon. Two brothers currently live in that country.  An Affidavit of Financial Condition filed by DESAGE in Clark County Family Court in July 2011 shows DESAGE has over $10,000,000 in real estate and land holdings in Lebanon.  Moreover, DESAGE was recently granted exclusive possession of his 40,000 square foot palace in Lebanon, effective July 1, 2012, pursuant to a divorce decree in that country.  Information recently received from confidential sources, whose identities are known to Your Affiant and who have previously provided reliable information, indicate DESAGE is planning to leave the United States to relocate to Lebanon in the next ten (10) days.

     7.     Based on my review of financial records, along with witness interviews that I conducted, I am aware that DESAGE maintains an extravagant lifestyle, including the purchase of several luxury vehicles and homes in Las Vegas for himself and others, the accrual of millions of dollars of gambling losses to Las Vegas casinos, and the use of private jets for both domestic and international travel.

     8.     Desage is a prodigious gambler.  Records obtained from the Nevada Gaming Control Board demonstrate that since 2006, DESAGE has lost in excess of $20 million to various Las Vegas casinos.  An Affidavit of Financial Condition filed by DESAGE in Clark County Family Court in July 2011 shows DESAGE had casino gambling debt of approximately $4 million at that time.

4

9.      My investigation has shown that DESAGE uses several business entities to facilitate his schemes.  These entities include, but are not limited to BERYT, CADEAU EXPRESS and MERITS INCENTIVES.

10.     My investigation has shown that DESAGE uses multiple bank accounts to facilitate his fraud.  Many of these bank accounts are controlled jointly with Gary Parkinson ("Parkinson").  Parkinson is a DESAGE employee and is Vice President of Finance for DESAGE's businesses.  During the course of my investigation, I have reviewed DESAGE bank records from Bank of America, Bank of Nevada and Wells Fargo Bank.  I have also reviewed numerous General Ledgers and Check Registers relating to the following entities and individuals: Beryt, Cadeau Express, Merits Incentives, Debra Desage and RAMON DESAGE, in addition to various bank records provided by DESAGE investors.

On June 27, 2012, I spoke with Maria Sgroia, Operations Support Specialist at Bank of Nevada. Sgroia stated that all wire transfers into or out of Bank of Nevada accounts leave the state while being transacted.  Sgroia further stated that wire transfers of money currently go through the Federal Reserve Bank in Minneapolis, Minnesota.  Prior to using the Minneapolis Federal Reserve Bank, Bank of Nevada used the Federal Reserve Bank in Los Angeles, California, to accomplish wire fund transfers.

**D.      Investor Fraud**

**1.      Investor #1**

11.     On February 23, 2011, I interviewed Investor #1.  Investor #1's identity is known to Your Affiant, who will provide it to the Court, if requested.  Investor #1 stated that he/she and his/her business provided investment capital to DESAGE based on DESAGE's representation that he was in the wholesale distribution business and would use these funds to purchase and sell various products to Las Vegas casinos at a profit.

12.     Investor #1 further stated that all funds provided to DESAGE were strictly for business purposes and not for DESAGE's personal expenses. Investor #1 would not have loaned DESAGE the funds if he/she believed DESAGE was going to use the funds for personal expenses or to repay other investors. DESAGE represented to Investor #1 that the funds invested would be used only for business purposes.

13.     During this investigation, I reviewed DESAGE and investor bank account records which identified several transactions relating to funds invested by Investor #1. All of the following transactions were conducted to and from CADEAU bank account #xxxxxx6157 at Bank of Nevada, an account controlled by RAMON DESAGE and Parkinson. On January 4, 2010, the balance on this account was approximately $28,000. I have determined that all of the payments to Las Vegas casinos identified below were in satisfaction of gambling debts.

        i.     On January 5, 2010, DESAGE deposited $800,000 in funds received from Investor #1. On January 5, 2010, DESAGE initiated wire transfers in the amount of $200,000 to the Hard Rock Casino, and $100,000 to the Paris Casino. On January 6, 2010, a wire transfer in the amount of $30,000 was made to Company B (associated with Investor # 3 as outlined in paragraph 16 below).

        ii.     On April 8, 2010, , DESAGE deposited $230,000 in funds received from Investor #1. On April 8, 2010, DESAGE initiated wire transfers in the amounts of $200,000 to the Las Vegas Sands, $20,000 to Paris Casino, and $175,000 to Red Rock Casino.

        iii.     On April 12, 2010, DESAGE deposited $430,000 in funds received from Investor #1. On April 12, 2010, DESAGE initiated wire transfers in the amount of $150,000 to Las Vegas Sands, and $250,000 to Paris casino.

        iv.     On April 22, 2010, DESAGE deposited a total of $1,010,000 in funds received from Investor #1. On April 22, 2010, a wire transfer of $200,000 was made to Las Vegas Sands. On April 23, 2010, a wire transfer of $40,000 was made to Paris Casino.

1                  v.        On April 29, 2010, DESAGE deposited $285,000 in funds received

2  from Investor #1. On April 29, 2010, DESAGE initiated wire transfers of $10,000 to Green Valley

3  Ranch, $250,000 to Hard Rock Casino, $120,000 to Las Vegas Sands, and $40,000 to Paris Casino.

4                  vi.       On May 3, 2010, , DESAGE deposited $400,000 in funds received

5  from Investor #1.  On May 3, 2010, DESAGE initiated wire transfers for $150,000 to Las Vegas

6  Sands, and $10,000 to Paris Casino.

7                  vii.      On May 6, 2010, DESAGE deposited $280,000 in funds received from

8  Investor #1.  On May 6, 2010, wire transfers for $100,000 to Las Vegas Sands, $100,000 to Destron

9  (MGM) and $50,000 to Wynn Casino were sent by CADEAU.

10                  viii.     On May 19, 2010, DESAGE made two deposits totaling $430,000 in

11  funds received from Investor #1.  On May 19, 2010, a wire for $120,000 was sent to Paris Casino by

12  CADEAU.

13                  ix.       On May 21, 2010, an investment of $120,000 was received by

14  CADEAU from Investor #1. On May 21, 2010, a wire in the amount of $100,000 was sent to Destron

15  (MGM), and a wire in the amount of $50,000 was sent to the Wynn by CADEAU.

16                  x.        On May 24, 2010, an investment of $600,000 was received by

17  CADEAU from Investor #1. On May 24, 2010, a wire in the amount of $20,000 was sent to the Paris

18  Casino and a wire in the amount of $100,000 was sent to Las Vegas Sands by CADEAU.

19                  xi.       On May 27, 2010, an investment of $285,000 was received by

20  CADEAU from Investor #1. On May 27, 2010, a wire in the amount of $20,000 was sent to the Paris

21  casino and a wire in the amount of $50,000 was sent to the Wynn by CADEAU.

22                  xii.      On May 28, 2010, an investment in the amount of $100,000 was

23  received by CADEAU from Investor #1. On May 28, 2010, a wire in the amount of $110,000 was

24  sent to the Las Vegas Sands.

25

26

xiii.   On June 3, 2010, an investment in the amount of $375,000 was received by CADEAU from Investor #1.  On June 3, 2010, a wire in the amount of $100,000 was sent to Destron (MGM) by CADEAU.  On June 4, 2010, a wire in the amount of $50,000 was sent to the Wynn, a wire in the amount of $250,000 was sent to Las Vegas Sands, and a wire in the amount of $120,000 was sent to the Paris Casino by CADEAU.

xiv.   On June 10, 2010, an investment in the amount of $270,000 was received by CADEAU from Investor #1.  On June 10, 2010, wire transfers in the amount of $160,000 to Las Vegas Sands, $100,000 to Destron (MGM), $50,000 to Wynn, and $10,000 to Paris Casino were sent by CADEAU.

xv.   On September 30, 2010, an investment of $950,000 was received by CADEAU from Investor #1.  On September 30, 2010, wire transfers in the amount of  $420,000 to Las Vegas Sands, and $30,000 to Company B (another investor) were sent by CADEAU.  On October 1, 2010, wire transfers in the amounts of $50,000 to the Wynn, $50,000 to Destron (MGM), and $30,000 to Company B were sent by CADEAU.

xvi.   On October 7, 2010, an investment of $275,000 was received by CADEAU from investor #1.  On October 7, 2010, a wire in the amount of $180,000 was sent to Las Vegas Sands.  On October 8, 2010, a wire in the amount of $30,000 was sent to Company B by CADEAU.

xvii.   On December 17, 2010, DESAGE deposited $540,000 in funds received from Investor #1.  On December 17, 2010, DESAGE initiated wire transfers in the amounts of $150,000 to Green Valley Ranch, and $225,000 to Las Vegas Sands.

xviii.   On December 23, 2010, DESAGE deposited $600,000 in funds received from Investor #1.  On December 23, 2010, DESAGE initiated wire transfers for $80,000 to Green Valley Ranch, and $350,000 to Las Vegas Sands.

8

1    xix.    An Affidavit of Financial Condition filed by DESAGE in Clark County
2  Family Court on July 15, 2011, shows DESAGE owed Investor #1 approximately $6.5 million at that
3  time.

4    xx.    A review of Bank of Nevada records and company financial records for
5  Cadeau Express, revealed a $200,000 wire transfer from Bank of Nevada Cadeau Express account #
6  xxxxxx6157 to the Hard Rock Casino on January 5, 2010.

7                              **2.    Investor #2**

8          14.    On October 11, 2011, I interviewed Investor #2, President of Company A.
9  Investor #2's identity is known to Your Affiant, who will provide it to the Court if requested. Investor
10 #2 provided the following information:

11         i.    Investor #2 formed Company A about five years ago to invest in deals
12 with DESAGE. Investor #2's original partner in Company A is deceased.

13         ii.    Investor #2 first met DESAGE around 1985 through a mutual friend.
14 DESAGE came to Investor #2's house one day and proposed a business deal. Investor #2 began
15 investing with DESAGE. Investor #2 stopped investing with DESAGE about one year later, but then
16 began investing again in approximately 2005.

17         iii.    Since Company A has been formed, it has engaged in fifteen (15) to
18 twenty (20) deals with DESAGE. Company A started with small investments and would reinvest the
19 profit from each deal into another one of DESAGE's business deals.

20         iv.    Company A would invoice DESAGE for each deal and DESAGE
21 usually did pay the money owed, but in most cases the payments were late. Each invoice would have
22 a description of what DESAGE was supposed to purchase with the money loaned to him.

23         v.    Based on DESAGE's representations to him, Investor #2 believed that
24 the money he/she was investing with DESAGE was being used for the deals that they agreed upon and
25 to purchase product for resale. He/she did not give DESAGE permission to use any portion of the

26

                                        9

money for personal use. Investor #2 would not have given DESAGE the money if he/she believed it was being used to pay DESAGE's personal expenses or repay other investors.

15.     During this investigation, I reviewed DESAGE and investor bank account records which identified several transactions relating to funds invested by Investor #2. All transactions were conducted to and from CADEAU bank account #xxxxxx6157 at Bank of Nevada, an account controlled by RAMON DESAGE and Parkinson. On March 2, 2009, the balance on this account was approximately $535,000. I have determined that all of the payments to Las Vegas casinos identified below were in satisfaction of gambling debts

      i.     On March 2, 2009, Investor #2 wired CADEAU $2,650,000 to be used for a deal involving Bric's luggage. DESAGE signed an invoice with Investor #2 reflecting the funds to be used for the purchase of Bric's luggage for subsequent resale.

      ii.     A review of DESAGE's financial records and bank accounts show the following transactions immediately following his receipt of $2,650,000 from Investor #2 between March 2, 2009 and March 11, 2009:

           A.     $680,000 payment to Investor #1 in repayment of a separate investment that predates the investment identified in Paragraph 13;

           B.     $130,000 wire transfer to Opbiz for DESAGE'S personal gambling account at Planet Hollywood Casino;

           C.     $1,700,000 wire transfer to Wynn Resorts; and

           D.     Two small payments to Bric of $1,149.15 and $2,185.15, both on March 2, 2009. An additional search for any additional payments to Bric shows two additional payments on May 6, 2009, in the amounts of $1,431.44 and $55,838.00

      iii.     An Affidavit of Financial Condition filed by DESAGE in Clark County Family Court on July 15, 2011, shows DESAGE owed Investor #2 approximately $3 million at that time.

iv.     A review of Bank of Nevada records and company financial records for Cadeau Express, revealed a $2,650,000 wire transfer from Investor #2 to Bank of Nevada Cadeau Express account # xxxxxx6157 on March 2, 2009.

### 3.     Investor #3

16.     On October 12 2011, I interviewed Investor #3, who is the President and owner of Company B. Investor #3's identity is known to Your Affiant, who will provide it to the Court, if requested. Investor #3 provided the following information:

i.      Investor #3 invested in various business deals with RAMON DESAGE between 2005-2010.

ii.     Based on DESAGE's representations, Company B loaned money to DESAGE based on Investor #3's understanding that all the money would be used for the agreed upon deals and to purchase products for resale. If Investor #3 knew that any portion of the money would be used for personal use, he/she would not have loaned the money to DESAGE. He/she would not have loaned the money to DESAGE if he knew it was going to be used to pay other investors.

iii.    On several occasions, DESAGE specifically represented to Investor #3 that the money Investor #3 was investing was being used to purchase products to make wholesale deals for the purchase and resale of goods.

iv.     Around 2005, DESAGE approached Company B with a business deal to invest in the purchase of obsolete products by the designer Versace. DESAGE stated that he could purchase the product at a fraction of its cost ("10 cents on the dollar.") Company B invested approximately $3.9 million; DESAGE promised a profit of $3 million within sixty (60) days.

v.      DESAGE returned the principal of its loan to Company B, but never paid the profit he promised. DESAGE told Investor #3 that the deal went bad and that he never received any profit on this deal.

11

17.     During this investigation, I reviewed DESAGE and investor bank account records which identified several transactions relating to the $3.9 million investment by Investor #3. All transactions were conducted to and from CADEAU bank account # xxxxxx6157 at Bank of Nevada, an account controlled by RAMON DESAGE and Parkinson. On May 18, 2005, the balance on this account was approximately $256,000. I have determined that all of the payments to Las Vegas casinos identified below were in satisfaction of gambling debts

i.     Between May 19, 2005 and May 23, 2005, Company B wired to CADEAU a total of $3,939,062 in three separate wires.

ii.     A review of DESAGE's financial records and bank accounts show the following transactions immediately following his receipt of the funds from Investor #3 between May 19, 2005 and May 25, 2005:

A.     $400,000 payment to an entity owned by Investor #2;

B.     $ 82,591.80 payment to Land Rover of Las Vegas;

C.     $150,000 payment to Investor #1;

D.     $190,000 cash withdrawal;

E.     $75,000 transfer to a DESAGE personal account;

F.     $252,5000 payment to Exquisite Air Charter; and

G.     $15,000 payment Joseph Abi-Rached (Ramon's brother)

18.     In 2010, Investor #3 invested approximately $1,750,000 million with DESAGE in a deal to purchase Bumble and Bumble (BB) product. Investor #3 invested these funds pursuant to a Secured Promissory Note executed on January 14, 2010 by DESAGE and Investor #3, in which DESAGE "represents and warrants (a) the loans made by Holder hereto to Maker [DESAGE] are being made for purposes of an investment by Maker [DESAGE] and not for consumer, personal, family or household purposes, . . ." Sometime after the initial investment, Investor #3 questioned whether all of the money loaned to DESAGE went to the BB deal that Investor #3 and DESAGE had

12

1  agreed upon. DESAGE told Investor #3 that the $1,750,000 investment had been stolen. DESAGE
2  claimed that someone ran off with the money and that he never received the product as promised.
3  DESAGE never identified who stole the money, only noting to Investor #3 that the person was from
4  Canada.

5      19.  The following information was gathered during the course of my investigation
6  regarding DESAGE's business arrangement with BB:

7          i.  Interviews and evidence gathered from BB show that, in 2006 and
8  2007, DESAGE fraudulently induced BB to sell their product to him at a deep discount in exchange
9  for DESAGE's promise to place the product in high-end suites at the Wynn Resort. Instead, DESAGE
10  illegally diverted and resold their product to an unauthorized reseller at a profit in excess of
11  $20,000,000 to DESAGE.

12          ii.  BB discovered this illegal diversion in January 2008 and immediately
13  severed all business relations with DESAGE and halted all shipments to him. It then filed a lawsuit
14  in Clark County District Court in March 2008 (case number A557670) against DESAGE alleging
15  fraud. By January 2010, DESAGE had been involved in civil litigation for almost two years with BB
16  regarding his diversion of their product.

17          iii.  During this investigation, I reviewed DESAGE and investor bank
18  account records which identified several transactions relating to funds invested by Investor #3. All
19  transactions were conducted to and from CADEAU bank account #xxxxxx6157 at Bank of Nevada,
20  an account controlled by RAMON DESAGE and Parkinson. From the 2010 investment of $1,750,000
21  by Investor #3, DESAGE engaged in the following transactions within the first seven days of receiving
22  the money:

23          A.  $530,000 payment to Hard Rock Hotel and Casino;
24          B.  $500,000 payment to Destron (MGM); and
25          C.  $300,000 to another investor.

26

13

1    I have determined that all of the payments to Las Vegas casinos identified
2   above were to settle gambling debts.

3                    iv.    DESAGE did not use any of these funds to purchase product for
4   placement at the Wynn Resort. An Affidavit of Financial Condition filed by DESAGE in Clark
5   County Family Court on July 15, 2011, shows DESAGE owed Investor #3 approximately $23.5
6   million at that time.

7                    v.    A review of Bank of Nevada records and company financial records for
8   Cadeau Express, revealed a $1,750,000 wire transfer from Investor #3 to Bank of Nevada Cadeau
9   Express account # xxxxxx6157 on January 15, 2010.

10                       **4.    Investor #4**

11          20.    On June 8, 2012, I interviewed Investor #4, a former casino executive. He
12  provided the following information:

13                   i.    Approximately one year ago, DESAGE and Investor #4 began
14  negotiating various investments. DESAGE told Investor #4 that if he/she advanced him money,
15  DESAGE could purchase various goods and products and then resell these products at a substantial
16  profit. DESAGE promised Investor #4 that he/she would receive a portion of the profit, in addition
17  to the return of the initial investment. Investor #4 was comfortable investing with DESAGE because
18  he/she knew DESAGE had been a long-time Las Vegas resident and knew DESAGE had substantial
19  apparent wealth and had been seemingly successful in business.

20                   ii.    Between May 2011 and the present, DESAGE and Investor #4 had
21  various phone conversations and personal meetings. DESAGE represented to Investor #4 that the
22  funds he/she advanced to DESAGE would be used solely and exclusively to purchase products for
23  resale.

24

25

26

                                          14

iii.    Based on these representations, Investor #4 began investing in products deals with DESAGE in May 2011 and made several wire transfers from his/her personal bank account to DESAGE.

21.    During this investigation, I reviewed DESAGE and investor bank account records which identified several transactions relating to funds invested by Investor #4. DESAGE's personal and business bank records from May 2011 to present pertaining to the investments made by Investor #4 reveal the following:

i.    Between May 1, 2011, and May 31, 2012, Investor #4 transferred a total of $56,401,531.50, wired from a family trust account, to Beryt Bank Account #xxxxxx6408 at Bank of Nevada. This account is controlled by RAMON DESAGE and Parkinson. BERYT is one of the businesses I have identified as being controlled by DESAGE.

ii.    The BERYT ACCOUNT # xxxxxx6408 received additional deposits totaling $10,292,458 from other sources.

iii.    Between May 1, 2011, and May 31, 2012, at least $23,500,000 was wired to various Las Vegas Casinos for gambling debts, either directly from BERYT Account # xxxxxx6408 or through other DESAGE controlled bank accounts, including CADEAU and DESAGE's personal account at Bank of Nevada (Acct. # xxxxxx4709).

iv.    DESAGE made disbursements to Investor #4 or entities controlled by him in the amount of $17,410,000.

v.    DESAGE transferred $405,000 to family members in Lebanon, including his brothers, Joseph and Youseef Abi-Rached, and his now ex-wife Debra Desage.

vi.    DESAGE transferred at least $2,000,000 to other investors, including Investor #2.

vii.    DESAGE transferred $7,121,000 to another company controlled by DESAGE and his associates and employees.

15

viii.    During this time frame, DESAGE transferred $1,800,000 to BB to settle BB's pending civil fraud lawsuit against him.

22.    A review of individual investments made by Investor #4 to DESAGE revealed the following:

i.    On May 17, 2011, Investor #4 wired $400,000 to DESAGE's BERYT account. This was Investor #4's first investment with DESAGE. Of this $400,000, DESAGE transferred $200,000 to CADEAU on May 31, 2011, and then transferred $50,000 from CADEAU to DESERT PALACE DBA CAESARS PALACE on the same day. Additionally, between June 3, 2011, and June 10, 2011, DESAGE transferred $160,000 of Investor #4's initial investment to DESAGE's personal bank account, all of which was wired to DESERT PALACE DBA CAESARS PALACE to settle gambling debts.

ii.    On June 15, 2011, Investor #4 wired an additional $601,531.50 to DESAGE's BERYT account. Between June 15, 2011, and July 20, 2011, DESAGE transferred $420,000 to his personal account. From there, DESAGE wired $250,000 to DESERT PALACE DBA CAESARS PALACE and $150,000 to NEVADA PROPERTY 1 LLC (his gambling account at the Cosmopolitan Hotel). DESAGE transferred an additional $50,000 directly from BERYT to DESERT PALACE DBA CAESARS PALACE.

iii.    On August 11, 2011, Investor #4 wired $1,700,000 to BERYT. On August 12, 2011, DESAGE transferred $300,000 to CADEAU and on August 15, 2011, transferred $200,000 from CADEAU to Investor #2.

iv.    Between August 11, 2011, and August 18, 2011, DESAGE transferred $250,000 to DESERT PALACE DBA CAESARS PALACE from BERYT and on August 18, 2011, DESAGE transferred $150,000 to Roger and Youseef Abi-Rached (his brothers in Lebanon). Additionally, on August 12, 2011, DESAGE transferred $400,000 back to Investor #4 from BERYT.

16

v.      Between September 19, 2011 and September 27, 2011, Investor #4 made five separate investments, totaling $16,200,000, to BERYT, all by wire transfer.  From these funds, DESAGE engaged in the following transactions.  All of the payments to Las Vegas casinos identified below were in satisfaction of gambling debts:

A.      On September 20, 2011, DESAGE transferred $900,000 to CADEAU. The next day, from CADEAU, he transferred $300,000 to Red Rock Station Casino, $20,000 to DESERT PALACE DBA CAESARS PALACE and $160,000 to the Palms Casino, all in satisfaction of gambling debts.

B.      On September 21, 2011, DESAGE transferred $1,170,000 to the Wynn Resort.

C.      On September 22, 2011, DESAGE transferred $350,000 to Destron (MGM).

D.      On September 23, 26 and 29, 2011, and October 3, 2011, DESAGE transferred a total of $520,000 to DESERT PALACE DBA CAESARS PALACE.

E.      On September 28, 2011, DESAGE transferred $480,000 to the Green Valley Ranch Casino.

F.      On the same day, DESAGE transferred $100,000 to his brothers, Roger and Youseef Abi-Rached.

G.      On September 29, 2011, DESAGE transferred $200,000 to NV Property (Cosmopolitan Casino).

H.      On September 29, 2011, DESAGE transferred $30,000 to Debra Desage.

vi.     DESAGE currently owes Investor #4 approximately $40,000,000.

17

vii.    A review of Bank of Nevada records and company financial records for Beryt, revealed a $1,700,000 wire transfer from Investor #4 to Bank of Nevada Beryt account # xxxxxx6408 on August 11, 2011.

### E.    Conclusion

23.    Based on the foregoing, I submit that there is probable cause to believe that RAMON DESAGE has violated Title 18, United States Code, Section 1343 (Wire Fraud), and respectfully request that the Court issue a warrant for his arrest.

Julie Bomstad
Julie Bomstad
Special Agent

SUBSCRIBED and SWORN to before me
this 𝟸𝟽 th day of June, 2012

UNITED STATES MAGISTRATE JUDGE

18