1
2
3
4
5
6

DANIEL G. BOGDEN
United States Attorney
PATRICK BURNS
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336
FAX: (702) 388-6418
John.P.Burns@usdoj.gov

Attorney for the United States of America

7
8
9

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
## -oOo-

10
11
12
13
14
15
16
17

UNITED STATES OF AMERICA,

Plaintiff,

vs.

RAMON DESAGE,
  aka, "RAMON ABI-RACHED,"
  aka, "RAYMOND ANTOINE ABI-
    RACHED,"

PETER AKARAGIAN, and

GARY PARKINSON
    Defendants.

Case No.: 2:13-cr-00039-JAD-VCF

**GOVERNMENT'S APPEAL OF MAGISTRATE'S ORDER (ECF No. 121) GRANTING DEFENDANT DESAGE'S MOTION FOR DISCOVERY OF TAX RETURNS (ECF No. 107)**

18
19
20
21

    COMES NOW the United State of America, by and through DANIEL G. BOGDEN, United States Attorney, and PATRICK BURNS, Assistant United States Attorney, and hereby respectfully submits this Government's Appeal of Magistrate's Order (ECF No. 121) Granting Defendant Desage's Motion to Compel Production of Tax Returns (ECF No. 107).

22
23
24

/ / /
/ / /
/ / /
/ / /

1

# TABLE OF CONTENTS

**Factual and Procedural Background** ............................................................................ 1

**Memorandum of Points and Authorities** .................................................................... 8

**I. Legal Standard for Review of a Magistrate's Order on Nondispositive Motions** ................ 8

**II. The Magistrate's Order Granting Desage Possession of a Decade's Worth of Tax Returns for More than a Dozen Victims, Individuals, and Entities is Clearly Erroneous, Contrary to Law, and a Manifest Abuse of Discretion** ......................... 10

    **A. Under the Plain Language of 26 U.S.C § 6103 and its Interpretive Jurisprudence, a Court Lacks the Power Under Rule 16 or Jencks to Compel Production of Taxpayer Return Information, Unless the United States Attorney Already Possesses that Taxpayer Information Under One of the Two Narrow Exceptions Provided in 26 U.S.C § 6103(i)(1) and 6103(h)(4)(D)** ......................... 10

      **1) Section 6103(a) Broadly and Strictly Prohibits the Release of Taxpayer Returns and Return Information—the Statute's Narrow Exceptions Are Strictly Construed and Not Subject to Judicial Expansion** ......................... 10

      **2) Section 6103(h)'s Exception for Release of Taxpayer Return Information to Certain Federal Officials for Purposes of Tax Administration Does Not Empower a Court to Order, Under Rule 16 or Jencks, the Disclosure of Taxpayer Information Not Already Obtained by and in the Possession of the United States Attorney** ......................... 12

      **3) Section 6103(i)'s Provision for Release of Taxpayer Return Information in a Criminal Case Pursuant to Rule 16 and Jencks is Specifically Limited to Taxpayer Return Information that is: (1) Already Released Upon an Application Authorized by the United States Attorney Pursuant to § 6103(i)(1); and (2) Already in the Actual Possession of the United States Attorney** ......................... 18

        **(i) Under § 6103(i)(4), Governing Release of Information in General Criminal Cases, Rule 16 and Jencks Do Not Operate Unless the United States Attorney Has Already Obtained the Taxpayer Information Pursuant to the Process Described in § 6103(i)(1)** ......................... 18

        **(ii) Section 6103(i)(4)'s Interpretive Jurisprudence Confirms that Rule 16 and Jencks Do Not Create a Power to Produce Taxpayer Information Unless the United States Attorney Already Possesses the Information Under § 6103(i)(1)** ......................... 19

    **B. The Magistrate's Order was Clearly Erroneous and Contrary to Law Because It Wrongly Concluded that Rule 16 Permitted the Disclosure of Tax Returns that Have Never Been Obtained by the United States Attorney Pursuant to Either § 6103(h) or § 6103(i)(1)** ......................... 23

    **C. In Concluding that *Brady/Giglio* Entitles Desage to Production of the Tax Returns, the Magistrate's Order was Clearly Erroneous and Contrary to Both *Brady*'s Imputation Doctrine and Materiality Standard—with the Exception**

of the Frey/Hefetz Returns, the Prosecution Team is Not In Possession of
the Tax Returns, and, Even if it Was, Assuming All Desage Alleges,
The Tax Returns Would Not be Material Under *Brady* ......................................................... 24

   1) Excepting the Hefetz/Frey Returns, None of the Requested Tax Returns
     are Within the Government's Actual or Constructive Possession,
     Thus *Brady* is Not a Source for Compelling Their Production ................................. 25

   2) Even Assuming All That Desage Alleges, the Tax Returns Are Not Material
     Under *Brady* Because They are at Best Cumulative Impeachment Material
     Based on a Fact the Government Does Not Contest, Thus the Magistrate
     Clearly Erred in Misconstruing *Brady*'s Materiality Standard ................................... 29

   3) The Tax Return Information is Also Not Material Under *Brady* Because
     Desage's Unspecified, Alleged Payments Do Not Constitute Income,
     Thus the Tax Returns Do Not Have the Impeachment Value He Alleges ................... 32

**D. The Magistrate's Order was Clearly Erroneous and a Manifest Abuse of
Discretion Because it Failed to Even Individually Assess Desage's Fourteen
Different Categories of Requested Tax Returns and Disregarded
§ 6103's Strong Confidentiality Protections by Failing to Even Consider
Protective Orders, *In Camera Review* for Materiality, or Other Privacy/
Confidentiality Safeguards** ............................................................................................... 34

**Conclusion** ......................................................................................................................... 37

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Federal Cases</u>**

3    *Barker v. Fleming*, 423 F.3d 1085 (9th Cir. 2005) .............................................................. 32

4    *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 119 (1963) ...............................9,17, 21-32, 34-37

     *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002) ......... 10

5    *Chamberlain v. Kurtz*, 589 F.2d 827 (5th Cir. 1979) ....................................................... 14

6    *Commissioner of IRS v. Liftin*, 317 F.2d. 234 (4th Cir. 1963)........................................... 33

7    *Conley v. United States*, 415 F.3d 183 (1st Cir. 2005) ..................................................... 31

     *DiAndre v. United States*, 968 F.2d 1049 (10th Cir. 1992) .............................................. 34

8    *Dowd v. Calabrese*, 101 F.R.D. 427 (D. D.C. 1984)................................................... 11 n.4

9    *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972) .........9, 24, 27 n.14, 28-29, 31-34, 36 n.25

10    *Huckaby* v. *United States Dep't of Treasury*, 794 F.2d 1041 (5th Cir. 1986) .................................. 10

11    *Kyles v. Whitely*, 514 U.S. 419, 115 S.Ct. 1555 (1995)................................................... 25

     *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474 (1972) ............................................... 17

12    *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173 (1959) .................................................... 29

13    *Olsen v. Egger*, 594 F. Supp. 644 (S.D.N.Y. 1984)................................................... 11, 19-20

14    *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989 (1987) ........................................... 22

     *Rivers v. Borg*, 980 F.2d 738 (9th Cir. 1992) ................................................................. 31

15    *Robbins v. Smith*, 411 F. App'x 37 (9th Cir. 2010) ........................................................ 31

16    *Stokwitz v. United States*, 831 F.2d 893 (9th Cir. 1987)............................................ 11, 19

17    *Tierney v. Schweiker*, 718 F.2d 449 (D.C.Cir. 1983) ..................................................... 20

     *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392 (1976)................................... 27 n.15, 30

18    *United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998)................................................... 27

19    *United States v. Bacheler*, 611 F.2d 443 (3rd Cir. 1979) ................................................ 11

     *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375(1985) ................................... 29-30

20    *United States v. Bibby*, 752 F.2d 1116 (6th Cir.1985)........................................ 26, 26 n.15

21    *United States v. Brodnik*, 710 F. Supp. 2d 526 (S.D. W. Va. 2010)............................... 27-28

22    *United States v. Caro*, 597 F.3d 608 (4th Cir. 2010)...................................................... 24

     *United States v. Caro*, No. 08-20044-CR, 2011 WL 4625383 (S.D. Fla. 2011) ...................... 28 n.16

23    *United States v. Conder*, 423 F.2d 904 (6th Cir. 1970) .................................................. 29

24    *United States v. Croft*, 124 F.3d 1109 (9th Cir. 1997)................................................... 30

*United States v. Dumas*, 207 F.3d 11 (1st Cir. 2000) ............................................................... 31

*United States v. Escobar*, 674 F.2d 469 (5th Cir. 1982) ..................................................... 27 n.15

*United States v. Frans*, 697 F.2d 188 (7th Cir. 1983) ............................................................... 10

*United States v. Gil*, 297 F.3d 93 (2d Cir. 2002) ...................................................................... 25

*United States v. Hernandez*, 31 F.3d 354 (6th Cir. 1994) ......................................................... 36

*United States v. Hutcher*, 622 F.2d 1083 (2d Cir. 1980) ................................................... 27 n.15

*United States v. Jackson*, 850 F. Supp. 1481 (D. Kan. 1994) .............................. 15 n.7, 22-23,

*United States v. Jones*, 678 F. Supp. 1302 (S.D. Ohio 1988) ................................................... 25

*United States v. Larkin*, No. 15-CR-00010-SI-1, 2016 WL 771260 (N.D. Cal. 2016) ..................... 37

*United States v. Liebert*, 519 F.2d 542 (3d Cir. 1975) ........................................................ 11 n.4

*United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993) ......................................................... 27-28

*United States v. Lochmondy*, 890 F.2d 817 (6th Cir. 1989) ............................................. 22-23, 26

*United States v. Lloyd*, 992 F.2d 348 (D.C. Cir. 1993) ............................................................. 36

*United States v. Mandel*, 914 F.2d 1215 (9th Cir. 1990) .................................................... 30 n.18

*United States v. Mangan*, 575 F.2d 32 (2d Cir. 1978) ......................................................... 21-22

*United States v. Marashi*, 913 F.2d 724 (9th Cir. 1990) ....................................................... 31-32

*United States v. Mitchell*, 178 F.3d 904 (7th Cir. 1999) ........................................................... 36

*United States v. Morris*, 957 F.2d 1391 (7th Cir. 1992) ............................................................ 36

*United States v. Muniz-Jaquez*, 718 F.3d 1180 (9th Cir. 2013) ................................................ 29

*United States v. Pac. Gas & Elec. Co.*, 2016 WL 3185008 (N.D. Cal. 2016) ............................. 29

*United States v. Payne*, 63 F.3d 1200 (2d Cir. 1995) ............................................................... 32

*United States v. Pelullo*, 399 F.3d 197 (3d Cir. 2005) ......................................................... 27-28

*United States v. Petrillo*, 821 F.2d 85 (2d Cir. 1987) .............................................................. 32

*United States v. Prokop*, No. 2:09-CR-00022-MMD, 2012 WL 2375001 (D. Nev. 2012) ............... 28

*United States v. Quinn*, 123 F.3d 1415 (11th Cir. 1997) ........................................................... 24

*United States v. Recognition Equip., Inc.*, 711 F. Supp. 1 (D. D.C. 1989) .................................. 20

*United States v. Recognition Equip., Inc.*, 720 F. Supp. 13 (D. D.C. 1989) ............... 15 n.7, 20-22, 26

*United States v. Robertson*, 634 F. Supp. 1020 (E.D. Cal. 1986) .................................. 5, 14-16, 20-24

*United States v. Stegman*, 2015 WL 926103  (D. Kan. 2015) ...................................... 35-36, 35-36 n.25

*United States v. Stein*, 424 F. Supp. 2d 720 (S.D.N.Y. 2006) ................................................... 27

*United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988) ........................................................... 31

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 68 S. Ct. 525 (1948)..........................................9

*United States v. Wilmington Trust Corp.*, 2016 WL 3749860 (D. Del. 2016) ..................................28

*Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837 (1977) ...............................................................24

## <u>Federal Statutes</u>

18 U.S.C. § 371 ...................................................................................................................................... 8

18 U.S.C. § 1343.................................................................................................................................7-8

18 U.S.C. § 1957 .................................................................................................................................... 8

18 U.S.C. § 3500............................................................................................................................ 13 n.6, 21

26 U.S.C. § 6103(a) ................................................................................................................. 10, 19, 21, 22

26 U.S.C. § 6103(h) ............................................................................................10-15, 17, 20-21, 23, 36

26 U.S.C. § 6103(i) .................................................................................................................18-23, 26,

26 U.S.C. § 7201.................................................................................................................................7-8

26 U.S.C. § 7213............................................................................................... 11, 11 n.4, 24, 24 n.12

28 U.S.C. § 636(b)(1)(A) ...................................................................................................................... 9

## <u>Federal Rules</u>

Fed.R.Crim.P. 16 ................................................................................... 10, 12-25, 27, 29, 30 n.18, 34,

## <u>Other Materials</u>

IRS Publication 550, *Investment Income and Expenses* (2014) ......................................................... 33

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of Defendant Ramon Desage (Desage)'s investment frauds in which he solicited purported investments in his product diversion business and then applied the investor money toward his gambling habit, lavish lifestyle, and Ponzi-scheme payments to other investors. The case also involves Desage's commission of massive tax fraud based on his failure to report tens of millions of dollars in income relating to his business, and also to his fraudulent mischaracterization of gambling, lifestyle, and other personal expenditures as deductible business expenses. Defendants Peter Akaragian (Akaragian) and Gary Parkinson (Parkinson) are, respectively, Desage's tax preparer and in-house bookkeeper. Parkinson and Desage together created spreadsheets purporting to show Desage's revenue and expenses generated through his product diversion business. Akaragian collaborated with Desage and Parkinson to further doctor and manipulate Desage's financial reporting and then submit false tax returns that evaded income and claimed fraudulent deductions. Those false income tax returns caused a civil audit of Desage's tax returns. The audit was eventually referred to the Criminal Investigation division of the Internal Revenue Service (IRS-CID); that criminal probe discovered Desage's investment fraud, which forms a part of the indictment in this case.

Desage was arrested and a criminal complaint filed on June 28, 2012. ECF No. 1. On January 29, 2013, a grand jury in the District of Nevada indicted Desage for four counts of Wire Fraud (18 U.S.C. § 1343). ECF No. 30. Those charges involved Desage fraudulently obtaining money from investors which he used to pay existing gambling marker debts and to fund his lifestyle. A grand jury then subsequently returned a July 20, 2013 superseding indictment against Desage. ECF No. 45. This superseding indictment charged Desage with: Counts 1-4 – Wire Fraud (18 U.S.C. § 1343); and Counts 5-8 – Income Tax Evasion (28 U.S.C. § 7201). *Id.* On February 11, 2014, a grand jury returned a second superseding indictment that charged Desage, Akaragian, and Parkinson in its

Count 1 with Conspiracy to Defraud the United States (18 U.S.C. § 371).[1] Only Desage was charged in the indictment's remaining counts, which included: Counts 2-20 – Wire Fraud (Wire Fraud (18 U.S.C. § 1343); Counts 21-48 – Money Laundering (18 U.S.C. 1957); and Counts 49-52 – Income Tax Evasion (28 U.S.C. § 7201).

During the course of pretrial litigation, Desage filed a motion seeking the production of ten (10) years' worth of the personal income tax returns of the victims of his investment frauds, other non-victim individuals not referred to in the indictment, and a number of entities. ECF No. 107. In all, Desage enumerated fourteen (14) individuals, entities, or groups of entities, some unspecified, whose tax returns would be produced if the motion was granted.[2] The Government opposed the motion. ECF No. 114. On August 13, 2015, the magistrate judge granted the motion in its entirety and ordered production of the decade's worth of tax returns of the numerous individuals and entities. ECF No. 121. On August 25, 2015, the Government filed with the district court an appeal of the magistrate's order. ECF No. 127. The Government then filed a motion for leave to submit a supplemental brief. That motion was granted in part with the Court directing the Government to file a new appeal brief, which would address 26 U.S.C. § 6103 and any other points of appeal. The Government's appeal follows.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

The magistrate's order compelling the production of a decade's worth of victim, individual,

---

[1] ECF Doc. No. 59.

[2] Desage's motion requested the 2005-2014 tax returns for all of the following: (i) Jacob (Yakov) Hefetz; (ii) Any entity with which Jacob (Yakov) Hefetz is or was affiliated that is alleged to have loaned funds to or invested funds with Ramon Desage or any entity with which Mr. Desage is affiliated; (iii) Harold Foonberg; (iv) Stanley Sunkin; (v) Any entity with which Harold Foonberg is or was affiliated that is alleged to have loaned funds to or invested funds with Ramon Desage or any entity with which Mr. Desage is affiliated; (vi) Harvey Vechery; (vii) Linda Vechery; (viii) Any entity with which Harvey Vechery is or was affiliated that is alleged to have loaned funds to or invested funds with Ramon Desage or any entity with which Mr. Desage is affiliated; (ix) William Richardson; (x) Any entity with which William Richardson is or was affiliated that is alleged to have loaned funds to or invested funds with Ramon Desage or any entity with which Mr. Desage is affiliated; (xi) Herb Frey; (xii) AW Financial Group; (xiii) Federal Pants Company, Inc.; and (xiv) F&S Partners LP. Of all these individuals and entities, only Hefetz, Harvey Vechery, Foonberg, and Richardson are victims in this case.

and entity tax returns is clearly erroneous, contrary to law, and an abuse of discretion. Despite clear law to the contrary—the federal statute regulating confidentiality and exceptions for release of taxpayer information—the magistrate erroneously assumed that Rule 16 permitted the production of these confidential tax returns. Simply put: the requested tax returns are not producible under Rule 16 or the Jencks Act (Jencks).[3] They are also not producible under *Brady/Giglio* In casually assuming the materiality of the slew of tax returns, the magistrate not only failed to apply the correct *Brady/Giglio* materiality standard, but also assumed—without any factual inquiry or application of *Brady*'s constructive possession principle—that the Government was in possession of the tax returns Desage seeks. Finally, the magistrate abused his discretion by issuing a sweeping, overbroad, and indiscriminate order that, without any sort of *in camera* review or other safeguards, publicly releases a decade of highly-sensitive, legally-confidential personal information about victims and non-parties to prove a defense point that is not even contested, i.e., that Desage's Ponzi scheme payments were not reported as income.

## I.      Legal Standard for Review of a Magistrate's Order on Nondispositive Motions

With the exception of specified dispositive motions, 28 U.S.C. § 636(b)(1)(A) provides that a "judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court…" The district court judge may, however, "reconsider any pretrial matter…where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." The United States Supreme Court has observed that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948). "An order may be deemed contrary to law 'when it

---

[3] 18 U.S.C. § 3500.

fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (citation omitted). A district court is not purely limited to assessing whether the magistrate's order is clearly erroneous or contrary to law, but also "may satisfy itself that the recommended actions are fair and proper by receiving additional evidence or conducting a full review." *United States v. Frans*, 697 F.2d 188, 191 n.3 (7th Cir. 1983) (citations omitted), *cert. denied*, 464 U.S. 828, 104 S. Ct. 104, 78 L. Ed. 2d 107 (1983).

II.   **The Magistrate's Order Granting Desage Possession of a Decade's Worth of Tax Returns for More than a Dozen Victims, Individuals, and Entities is Clearly Erroneous, Contrary to Law, and a Manifest Abuse of Discretion**

A.   **Under the Plain Language of 26 U.S.C § 6103 and its Interpretive Jurisprudence, a Court Lacks the Power Under Rule 16 or *Jencks* to Compel Production of Taxpayer Return Information, Unless the United States Attorney Already Possesses that Taxpayer Information Under One of Two Narrow Exceptions Provided in 26 U.S.C § 6103(i)(1) and 6103(h)(4)(D)**

1)   **Section 6103(a) Broadly and Strictly Prohibits the Release of Taxpayer Returns and Return Information—the Statute's Narrow Exceptions Are Strictly Construed and Not Subject to Judicial Expansion**

Taxpayer returns and information are broadly and strictly protected as confidential by federal law, which prohibits and criminalizes the unauthorized release of such information. Title Twenty-Six, Section 6103 of the United States Code, enacts this strict confidentiality, and prescribes in detail (and exclusively controls) the limited circumstances under which taxpayer information may be released. *Huckaby v. United States Dep't of Treasury, Internal Revenue Serv.*, 794 F.2d 1041, 1046 (5th Cir. 1986) (with certain exceptions, "Section 6103 forbids the disclosure of return information"). The statute's protection of confidentiality and nondisclosure extends to commanding nondisclosure by federal officers and employees (or any other person) of any taxpayer returns or information:

> (a) General rule.--Returns and return information shall be confidential, and except as authorized by this title--
> (1) no officer or employee of the United States,

10

(2) no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c), and

(3) no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii), subsection (k)(10), paragraph (6), (10), (12), (16), (19), (20), or (21) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

26 U.S.C. § 6103(a).

Unauthorized disclosure under the statute carries serious criminal and civil penalties. 26 U.S.C. § 7213. In crafting the statute, Congress engaged in "a legislative balancing of the right of taxpayers to the privacy of tax information in the hands of the IRS and the legitimate needs of others for access to that information." *Stokwitz v. United States*, 831 F.2d 893, 895 (9th Cir. 1987) (citing *United States v. Bacheler*, 611 F.2d 443, 446 (3rd Cir. 1979)). Moreover, the statute "establishes a comprehensive scheme for controlling the release *by the IRS* of information received from taxpayers to discrete identified parties, subject to specified conditions." *Id.* (emphasis original, footnote omitted). Finally the statute's exceptions are exclusive; courts have no "residual power" to create exceptions to the statute. Indeed, in 1976 the statute was amended to its present form precisely to eliminate the practice of courts making up exceptions outside of the statutorily-defined exceptions. *See Olsen v. Egger*, 594 F. Supp. 644, 646-47 (S.D.N.Y. 1984).[4] Section 6103(h)(4) and 6103(i)(4) are

---

[4] ("Prior to enactment of The Tax Reform Act of 1976, Section 7213 of the Internal Revenue Code prohibited disclosure 'in any manner not provided by law.' 26 U.S.C. § 7213(a) (amended by P.L. 94–455, Sec. 1202(d), 90 Stat. 1686). This language permitted courts to find a waiver of the right to confidentiality of the tax returns and to permit disclosure even though the regulations had not been complied with. *See United States v. Liebert*, 519 F.2d 542, 546 (3d Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 301 (1975). The amended version of Section 7213 states that disclosure is prohibited 'except as authorized in this title.' 26 U.S.C. § 7213 (1980). Thus, the statute, as amended, does not provide for disclosure beyond that specifically provided for in the 'title' and does not permit the court to create judicial exceptions to the general prohibition against disclosure. *Dowd v. Calabrese*, 101 F.R.D. 427 at 438–39 (D. D.C.1984); *see* Sen.Rep. No. 938, 94th Cong., 2d Sess. 318, reprinted in 1976 U.S.Code Cong. & Ad. News 2897, at 3747 ("the committee felt that returns and return information should generally be treated as confidential and not subject to

11

exceptions recognizing the potential for release of taxpayer information under Rule 16 or the Jencks Act. Discussion of these exceptions' requirements and limitations follow.

> **2) Section 6103(h)(4)'s Exception for Release of Taxpayer Information to Certain Federal Officials for Purposes of Tax Administration Does Not Empower a Court to Order, Under Rule 16 or Jencks, the Disclosure of Taxpayer Information Not Already Obtained by and in the Possession of the United States Attorney**

There are commonly two subsections in 26 U.S.C. § 6103 that a defendant points to as supposedly permitting a court to order, under Rule 16 or Jencks, production of taxpayer returns/information, § 6103(h) and 6103(i)(4). In actuality, based on the plain language of those provisions and the caselaw carefully interpreting those provisions, a Court is not empowered by Rule 16 or Jencks to order production of taxpayer information if it is not already in the possession of the United States attorney pursuant to the statute's exceptions. The first of these provisions, § 6103(h), is frequently mistaken as creating a discovery device that defendants can invoke under Rule 16 or Jencks to have a district court order discovery of confidential taxpayer information. The § 6103(h) exception does no such thing: it merely specifies the circumstances under which the Secretary of Treasury can permit DOJ officials to themselves review taxpayer information, and, once so obtained, make further disclosures of it, e.g., in a judicial proceeding if ordered. What § 6103(h) does not do, however, is create a pretrial discovery device for disclosure of taxpayer information that a DOJ official has never even sought or obtained access to in the first place.

Section 6103(h), governs, "Disclosure to certain Federal officers and employees for purposes of tax administration, etc[,]" and thus provides for those instances where the Secretary of the Treasury is permitted under the statute to furnish taxpayer information to officials and employees of

---

disclosure *except in those limited situations delineated in the newly amended section 6103* where the committee decided that disclosure was warranted.") (emphasis added). This prohibition against disclosure of the returns, except as provided by the statute, may not be circumvented even when the returns relate to a matter in issue during a litigation. *See Garity v. United States*, 81–2 U.S. Tax Cas. (CCH) ¶ 9599, at 88,006–08 (E.D. Mich.1980) (returns subject to discovery only if disclosure is permissable [*sic*] under Section 6103)...").

12

the Department of Treasury (Treasury) and the Department of Justice (DOJ), such as United States attorneys. 26 U.S.C. § 6103(h)(1)-(2). Subsection (h)'s second paragraph specifies the circumstances under which a DOJ official/employee is permitted to obtain taxpayer information. *Id.* Section 6103(h)(2) permits inspection or disclosure of taxpayer information to a DOJ employee only if "personally and directly engaged in…any proceeding before a Federal grand jury or preparation for any proceeding (or investigation which may result in such a proceeding) before a Federal grand jury or any Federal or State court." And such access is conditioned upon the taxpayer information falling into one of three categories of connection with the proceeding.[5] Section 6103(h)'s third subparagraph addresses the required form of requests for such information under the subsection. Finally, § 6103(h)'s fourth and final subparagraph then specifies the circumstances under which the DOJ employee may disclose such return or return information in judicial or administrative proceedings. Four categories are enumerated.[6] Nowhere in § 6103(h) is there a provision generally empowering a court, under Rule 16 or Jencks, to order the Secretary of the Treasury to release taxpayer information.

Section 6103(h)(4)(D)'s mention of Rule 16 and Jencks is often mistaken as creating a general judicial power to order production of taxpayer information in a criminal case. That mistake is caused by reading (h)(4)(D) in isolation, and causing it to become divorced from § 6103(h)'s

---

[5] (Those categories include: "(A) the taxpayer is or may be a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability in respect of any tax imposed under this title; (B) the treatment of an item reflected on such return is or may be related to the resolution of an issue in the proceeding or investigation; or (C) such return or return information relates or may relate to a transactional relationship between a person who is or may be a party to the proceeding and the taxpayer which affects, or may affect, the resolution of an issue in such proceeding or investigation.").

[6] 26 U.S.C. § 6103(4)(A)-(D) ("(A) if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title; (B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding; (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or (D) to the extent required by order of a court pursuant to [the Jencks Act] section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.")

limited purpose to prescribe a narrow exception for DOJ officials/employees to access taxpayer information under limited circumstances. This misinterpretation is helpfully debunked by a leading case interpreting § 6103(h)(4)(D), *United States v. Robertson*, 634 F. Supp. 1020, 1022 (E.D. Cal. 1986), *aff'd*, 815 F.2d 714 (9th Cir. 1987), *cert. denied*, 484 U.S. 912, 108 S. Ct. 258, 98 L. Ed. 2d 215 (1987), an Eastern District of California case that was affirmed summarily on appeal by the Ninth Circuit, and for which the United States Supreme Court denied *certiorari*. Relying for interpretive guidance on the Fifth Circuit's examination of § 6103 in a civil FOIA action, *Chamberlain v. Kurtz*, 589 F.2d 827, 830 (5th Cir. 1979), *cert. denied*, 444 U.S. 842, 100 S. Ct. 82, 62 L. Ed. 2d 54 (1979), the *Robertson* court explained why § 6103(h)(4)(D) does not create a power of production under Rule 16:

> At first blush, subdivision (4)(D) suggests that the court may order production of the tax returns from the IRS pursuant to Rule 16 for use in a tax administration prosecution. But subdivision (4)(D) does not provide as such, and must be read in conjunction with subsection (h) as a whole. In *Chamberlain v. Kurtz*, 589 F.2d 827, 837–38 (5th Cir.1979) the court explained how subsection (h)(4) should be interpreted:
>
>> Chamberlain argues, however, that subsection (h)(4) which authorizes disclosure 'in judicial and administrative tax proceedings' applies to this case since the instant litigation is 'a Federal or State judicial or administrative proceeding pertaining to tax administration.' He contends that this provision mandates disclosure to him unless the Secretary determines that 'such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.' We reject this interpretation. The provision must be read in context; subsection (h) deals with disclosure to federal officials for purposes of tax administration. *Subsection (h)(4) merely describes the circumstances in which these officials may disclose confidential information in a judicial or administrative proceeding. Without subsection (h)(4) officials could not use the information as evidence in such proceedings. There is nothing to indicate that the provision was designed to accord a taxpayer automatic access to all information pertaining to his tax liability immediately upon the initiation of such a proceeding.*
>> (emphasis added).

Thus, subsection (h)(4) presupposes that the IRS has made the return information

available for inspection by the United States Attorney under another subsection. Only after the Justice Department obtains possession of the return information does subdivision (4)(D) permit discovery under Rule 16.[]The court explained above that **the IRS has not disclosed the requested return information to the United States Attorney. Accordingly, section 6103(h)(4)(D) does not require the court to order disclosure to defendant pursuant to Rule 16**.

*Robertson*, 634 F. Supp. at 1027–28 (italicized emphasis original, bold emphasis added).

Thus, when properly read in the full context of § 6103(h), which, as noted, governs, "Disclosure to certain Federal officers and employees for purposes of tax administration, etc.[,]" § 6103(h)(4)(D), does not create a right to production of taxpayer information under Rule 16 or Jencks.[7]

This is not to say that where a United States attorney has previously obtained taxpayer information pursuant to § 6103(h), that the information is immune from being produced under Rule 16 or Jencks. Indeed, in a case where the United States attorney has already acted under 6103(h)'s exception for DOJ official/employee access to taxpayer information, she can be compelled under Rule 16 or Jencks to produce that taxpayer information if it otherwise meets the standards for production. This is precisely (and only) because the taxpayer information has *already* been obtained under the statute, is in the United States attorney's possession, and thus § 6103(h)(4)(D) permits its disclosure. What the statute *does not* do is authorize a court to order the Secretary to release taxpayer information regardless of whether it has previously been released to DOJ officials/employees under § 6103(h).

In this vein, the specific facts and outcome in *Robertson* are worth examining because they provide an example of how § 6103 is correctly applied. The *Robertson* defendant was a prison inmate charged with running a scheme to file fraudulent tax returns. *Robertson*, 634 F. Supp. at 1022-1023. Prison officials discovered in the defendant's cell one hundred blank and one completed W-2 forms; those forms were copied and provided to the defendant later in discovery. *Id.* at 1022.

---

[7] This analysis of the statute's interaction with Rule 16 and Jencks is mirrored in later cases interpreting § 6103(i)(1), the part of the statute that mentions disclosure of taxpayer information in non-tax judicial and administrative proceedings. Those cases are discussed below in Section II.A.3.ii (discussing *Recognition Equip. Inc.* and *Jackson*, *infra*).

The Government produced to the defendant in discovery six fraudulent tax returns that underlie the indictment's charges. *Id.* at 1023. Those six returns were determined by the investigating agency, Internal Revenue Service – Criminal Investigation Division (IRS-CID), to be fraudulent returns that the defendant filed. *Id.*

The defendant was able to derive from the copies of the W-2 forms found in his cell, the names of 100 individuals in addition to the six people identified in the six fraudulent tax returns already produced in discovery. *Id.* He then filed a discovery motion seeking to compel under Rule 16 the production of all related forms and tax returns filed by these additional 100 individual taxpayers. *Id.* The IRS-CID case agent was in possession of ninety-three of those additional 100 returns, all of which had been determined to not be fraudulent. *Id.*[8] Importantly, those ninety-three additional returns were in the possession of the IRS-CID agent, but had not been made available to the United States attorney prosecuting the case. *Id.* at 1028 ("The court explained above that the IRS has not disclosed the requested return information to the United States Attorney.").

Relying on Rule 16 of the Federal Rules of Criminal Procedure, the defendant sought production of that taxpayer information, including Copy A of the W-2 forms as well as tax returns. *Id.* at 1023-1026. After its examination of § 6103, discussed above, the *Robertson* court quickly rejected the idea that the Copy A of the W-2s and the seven tax returns not in the IRS-CID agent's possession were discoverable, noting that "[t]he prosecution certainly has no ready access to these; accordingly, they are not discoverable pursuant to Rule 16(a)(1)(C)." *Id.* at 1025.

As to the ninety-three tax returns in the IRS-CID agent's possession, but which had not been made available to the United States attorney, the court concluded their production could not be compelled under Rule 16 because "[o]nly after the Justice Department obtains possession of the

---

[8] The court presumed that the additional seven were somewhere in possession of the IRS. *Id.* at 1025.

return information does subdivision (4)(D) permit discovery under Rule 16." *Id.* at 1028. The court

further concluded that because the ninety-three returns were in the exclusive possession of the IRS-

CID, and the United States attorney did not have ready access to them, they were not discoverable

because, construing Rule 16 and § 6103 harmoniously, the notion of "government" did not extend to

IRS-CID:

> The statutory framework outlined above restricts the United States Attorney's access to the ninety-three tax returns in custody of Agent Burdick of the IRS Criminal Investigation Division. Weighing the relevant considerations of access of the material to the prosecution leads the court to conclude that in this case, "government" under Rule 16(a)(1)(C) does not include the criminal investigation division of the IRS. The United States Attorney cannot utilize the requested tax returns in preparing his case while avoiding discovery under Rule 16 because the United States Attorney has no access to them. Thus, the court's decision comports with those concerns expressed in Trevino.[]The court recognizes that this motion highlights a potential conflict between Rule 16 and the return information disclosure provisions of Title 26 of the United States Code. But it is a well-settled and sensible principle of statutory interpretation that statutes should be reconciled when possible. *See Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1972). The court believes that its interpretation of "government" rationally reconciles the possible conflict between the statutes at issue here without damaging the purpose of either.
> *Id.* at 1028.

Finally, in a footnote, the court noted that if the taxpayer information contained exculpatory *Brady*

material, the result might differ because *Brady* is a constitutional rule to which § 6103 must yield.

*Id.* at 1028. The court avoided that issue, however, because the defendant had not alleged the

taxpayer information contained *Brady* material. *Id.* at 1028 n.10.[9] Thus, when properly construed, §

6103(h)(4)(D), does not empower a court to order under Rule 16 or Jencks the production of

confidential taxpayer information.

---

[9] How *Brady* affects whether taxpayer information is producible in this case is discussed below in Section II.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

    **3) Section 6103(i)'s Provision for Release of Taxpayer Return Information in a Criminal Case Pursuant to Rule 16 and Jencks is Specifically Limited to Taxpayer Return Information that is: (1) Already Released Upon an Application Authorized by the United States Attorney Pursuant to § 6103(i)(1); and (2) Already in the Actual Possession of the United States Attorney**

    **(i)      Under § 6103(i)(4), Governing Release of Information in General Criminal Cases, Rule 16 and Jencks Do Not Operate Unless the United States Attorney Has Already Obtained the Taxpayer Information Pursuant to the Process Described in § 6103(i)(1)**

The other statutory exception, § 6103(i)(4), prescribes the limited circumstances under which taxpayer return information might be disclosed in judicial proceedings, including in criminal prosecutions governed by Rule 16 or Jencks. Section 6103(i)(4) addresses, "Use of certain disclosed returns and return information in judicial or administrative proceedings." The subsection's subparagraph (A) addressing, "Returns and taxpayer return information[,]" provides that taxpayer return information that has already been "obtained" under § 6103(i)(1) pursuant to an order requested by a United States attorney "may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute…(i) if the court finds that such return or taxpayer return information is probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party, or (ii) to the extent required by order of the court pursuant to [Jencks] or rule 16 of the Federal Rules of Criminal Procedure."[10] Thus, on this plain language, Rule 16 cannot be used to compel production of taxpayer returns or other confidential information unless that information has already, pursuant to § 6103(i)(1) been released to a United States attorney after she has authorized and requested an order releasing the information.

    Section 6103(i)(1), governing, "Disclosure of returns and return information for use in

---

[10] This also applies to tax returns released under § 6103 (i)(7)(C), addressing investigations of "terrorist activities."

18

criminal investigations[,]" provides that "The Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, any United States attorney…" may authorize an application to a federal district court judge or magistrate for an ex parte order permitting disclosure to and inspection by federal agency officers or employees personally engaged in: (1) judicial or administrative proceedings involving enforcement of a federal criminal statute; (2) an investigation that may result in such a proceeding; or (3) grand jury proceedings relating to enforcement of a federal criminal statute. 26 U.S.C. § 6103(i)(1)(A)(i)-(iii). Release of taxpayer information under these provisions is "solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding." *Id.*

It is clear then from the plain text of 26 U.S.C. § 6103 that, in a judicial proceeding, taxpayer returns or information may only be produced Rule 16 if the returns or information have already been disclosed and are already in the possession of the United States attorney after she has authorized a request to obtain that information pursuant to the process described in § 6103(i)(1). Where the taxpayer returns or information have not already been so obtained, § 6103(i)(4) does not provide for their disclosure pursuant to Rule 16, Jencks, or any other mechanism. Section 6103(a)'s broad, strict prohibition on the release of taxpayer return information is still then in place as to information not already released pursuant to § 6103(i)(1). Particularly because Congress has expressly spoken in § 6103 as to Rule 16/Jencks's limited role in the release of taxpayer information, Rule 16 and Jencks are not independent authorizations or legal avenues for releasing taxpayer information outside the statute. *See Stokwitz*, *Olsen*, *supra*.

(ii) **Section 6103(i)(4)'s Interpretive Jurisprudence Confirms that Rule 16 and Jencks Do Not Create a Power to Produce Taxpayer Information Unless the United States Attorney Already Possesses the Information Under § 6103(i)(1)**

All the courts to have considered the application of § 6103 in criminal cases and in relation

to Rule 16/Jencks come to the same conclusion that disclosure is not permissible unless the taxpayer returns sought by the defendant are already in the hands of the United States attorney prosecuting the criminal case pursuant to an authorized order under 26 U.S.C. § 6103(i)(1). Importantly, these cases draw on the *Robertson* court's examination of the parallel exception for disclosure in cases relating to tax administration, § 6103(h)(4). An instructive case is *United States v. Recognition Equip., Inc.*, 720 F. Supp. 13 (D. D.C. 1989), which involved the prosecution of an entity and two individuals for conspiring to operate a kickback and theft scheme related to a United States Postal Service contract. *See generally United States v. Recognition Equip., Inc.*, 711 F. Supp. 1, 4 (D. D.C. 1989). Prior to trial, the defendants moved under Rule 16 and 26 U.S.C. § 6103(i)(4)(A)(ii) to compel the Secretary of Treasury to disclose to the United States Attorney for the District of Columbia tax returns of five individuals who were not parties to the action. *Recognition Equip. Inc.*, 720 F. Supp. at 13-14.

The district court originally granted the defendant's request. *Id.* When the Government moved for reconsideration based on § 6103, however, the court reversed itself, denying the discovery request. *Id.* at 14. In doing so, the district court examined § 6103 and concluded that the tax return information the defendants sought was not subject to disclosure because the United States attorney had not authorized an application under § 6103(i)(1) for its release, which thus prevented the court from ordering its release pursuant to Rule 16:

> The rules governing the disclosure of tax returns and return information are strictly construed. *See, e.g.*, *Tierney v. Schweiker*, 718 F.2d 449, 455–56 (D.C.Cir. 1983); *Olsen v. Egger*, 594 F.Supp. 644, 646–47 (S.D.N.Y.1984). The language of § 6103(i)(4)(A) expressly states that this provision for the disclosure of tax returns and return information for use in judicial or administrative proceedings applies only where the tax returns or return information has already been obtained under § 6103(i)(1) which provides for disclosure of tax returns and return information for use in criminal investigations. Under § 6103(i)(1)(B) only specified Federal prosecutors, including United States attorneys, may authorize an application to this Court for an order for the disclosure of tax returns or return information. In the instant case, the United States attorney has not submitted an application for an order seeking the disclosure of that information. Accordingly, under the statutory scheme, this Court cannot order the disclosure of such information pursuant to defendants' motion. See

> *United States v. Mangan*, 575 F.2d 32, 39 (2d Cir.1978) (section 6103(i)(1)(B) specifically defines the means by which an application for disclosure must be made and "[w]hen Congress chooses to speak with such specificity, courts must heed its language").
> *Id.* at 14 (D. D.C. 1989).

Examining *Robertson*, *supra*, the district court went on to explain that Rule 16 of the Federal Rules of Criminal Procedure does not authorize a court order releasing taxpayer return information that has not *already* been produced as specified in § 6103(i)(1):

> Moreover, the defendants' reliance on Rule 16 to obtain the tax returns is inapposite because the United States attorney is not in possession of them. In *United States v. Robertson*, 634 F.Supp. 1020 (E.D. Ca.1986), *aff'd*, 815 F.2d 714 (9th Cir.), *cert. denied*, 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (1987), the Court analyzed the relationship between Rule 16 and 28 U.S.C. § 6103(h)(4) which provides for disclosure of tax returns or return information in judicial and administrative tax proceedings. Like § 6103(i)(4)(A)(ii) in the instant case, § 6103(h)(4) includes the provision that tax returns and tax information may be disclosed "to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure...." 26 U.S.C. § 6103(h)(4)(D). The *Robertson* Court noted that "[a]t first blush, subdivision (4)(D) suggests that the court may order production of the tax returns from the IRS pursuant to Rule 16 for use in a tax administration prosecution." 634 F.Supp. at 1027. However, the court recognized that subsection (h)(4) presupposes that the prosecuting United States attorney already is in the possession of the tax returns or return information and only then does subsection (h)(4)(D) permit discovery under Rule 16. *Id.* at 1028. *This Court finds the relationship in the instant case between Rule 16 and § 6103(i)(4) identical to that involved in Robertson where, as discussed above, subsection (i)(4)(A) presupposes that the tax returns and tax information at issue are already in the possession of the government under subsection (i)(1) in order for subsection (i)(4)(A)(ii) to apply.*
> *Id.* at 14 (emphasis added).

Thus, based on the plain language of § 6103 and its application to Rule 16 requests in *Recognition Equip. Inc.*, *Robertson*, *supra*, it is clear that a district court lacks the power to order disclosure of taxpayer information under Rule 16/Jencks unless the United States attorney is already in possession of that information pursuant to one of the two statutory exceptions.

Note further that, as with Rule 16, *Brady* does not empower the Court to order disclosure of taxpayer information in violation of § 6103(a). Picking up on the analysis of *Recognition Equip.*

*Inc.*, and *Robertson*, *supra*, the district court for the District of Kansas also rejected a similar defense bid to compel disclosure of confidential taxpayer information under Rule 16 and *Brady*. In *United States v. Jackson*, 850 F. Supp. 1481, 1490 (D. Kan. 1994), the defendants were charged with conspiracy to bribe a United States Postal Service employee. The bribee-employee pleaded guilty and agreed to cooperate with the prosecution. *Id.* at 1503. Prior to trial, the defendants moved for production of the bribee-employee's federal income tax returns, W2s, and 1099s for three years under a theory that such material would either: (1) demonstrate the bribe payments were believed by the employee to be lawful; or (2) if unreported, serve to impeach the employee by showing his cooperation resulted in the benefit of avoiding criminal income tax charges. *Id.*

The district court noted that the defendants "carried their burden of showing materiality under both *Brady* and Rule 16[,]" *id.*, but nevertheless refused to order disclosure based on 26 U.S.C. § 6103 for the same reasons articulated in *Recognition Equip. Inc.*, *Robertson*, *supra*. The court explained that, for purposes of considering *Brady*'s application, the tax returns were not in the possession of the United States attorney, and the Internal Revenue Service is not considered part of the prosecution team:

> The court does not order the prosecution to search out this information if it is not in their actual possession. The court does not believe the government has ready access to this information as to require production under Rule 16 or *Brady*. What the defendants request here qualifies as the tax returns and return information to which confidentiality is statutorily imposed. 26 U.S.C. § 6103(a), (b). Since this is a judicial proceeding unrelated to tax administration, the provisions for disclosure at 26 U.S.C. § 6103(i) are applicable. The defendants have not shown that the statutory grounds exist on which this information properly could be sought by the government and ordered by the court. "When Congress chooses to speak with such specificity, courts must heed its language." *United States v. Mangan*, 575 F.2d 32, 39 (2nd Cir.) (citation omitted), *cert. denied*, 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978). Under the statutory scheme, the court cannot order disclosure of information under § 6103(i)(4)(A), unless the prosecution acquires it upon a proper application and court order. *United States v. Recognition Equipment Inc.*, 720 F.Supp. 13, 14 (D.D.C. 1989); *see United States v. Lochmondy*, 890 F.2d 817, 824 (6th Cir. 1989). As for *Brady*, its constitutional mandate comes ahead of most statutory limitations on disclosure. *See Pennsylvania v. Ritchie* 480 U.S. at 59, 107 S.Ct. at 1002 (*Brady* duty

> on prosecution not trumped by state statute preventing disclosure of child abuse files); *United States v. Robertson*, 634 F.Supp. at 1028 n. 10 (A conflict between *Brady* and statutory restrictions would have to be resolved in favor of production). However, the Internal Revenue Service or its criminal investigation section is not closely aligned or connected with the Department of Justice, *Robertson*, 634 F.Supp. at 1025 n.7, or with this particular prosecution. *See United States v. Lochmondy*, 890 F.2d at 823–24. For these reasons, the court does not compel the prosecution to produce this information unless it is already in their actual possession.
> *United States v. Jackson*, 850 F. Supp. 1481, 1503-04 (D. Kan. 1994).

Thus, unless there is a showing of possession of the returns, just as with Rule 16, a defendant cannot avoid § 6103's strict confidentiality and nondisclosure rules by invoking *Brady*. [11]

> **B. The Magistrate's Order was Clearly Erroneous and Contrary to Law Because It Wrongly Concluded that Rule 16 Permitted the Disclosure of Tax Returns that Have Never Been Obtained by the United States Attorney Pursuant to Either § 6103(h) or § 6103(i)(1)**

In light of this clear law prohibiting disclosure, the magistrate's order is clearly erroneous and contrary to law. First, the magistrate never undertook to ask, in the first place, whether the Government was in possession of any of these tax returns. Having made no such factual inquiry or addressing the question in other than conclusory fashion, the magistrate just ruled without explanation that the Government was in possession of the tax returns. The United States Attorney is not in possession of any the requested tax returns pursuant to § 6103(h). And the undersigned can represent to the Court that the United States Attorney has never moved pursuant to § 6103(i)(1) for an order releasing any of the taxpayer information Desage seeks.

Because the United States Attorney is not in possession of the requested tax returns, the magistrate clearly erred in summarily deciding that all of the decade's worth of tax returns for the fourteen categories were subject to production under Rule 16 or Jencks. "The IRS is constrained by specific disclosure statutes that makes willful unauthorized disclosure of tax information a federal

---

[11] It is important to note at this point that IRS-CID's participation as part of the prosecution team in Desage's case does not render the entire IRS part of the prosecution team under *Brady*. *Cf. Robertson*, 634 F. Supp. at 1025 (despite fact that IRS-CID was an investigative part of the prosecution team, concluding, "The IRS is neither closely connected to the United States Attorney's Office nor an arm of the prosecution."). This issue is discussed further below in Section II.C.

crime, *see* 26 U.S.C. section 7213, a situation not faced when relevant evidence is in the custody of other investigative agencies." *Robertson*, 634 F. Supp. at 1026.[12] Because there is no statutory authorization to release the tax returns under Rule 16 or Jencks and no rule of pretrial discovery permits the requested order, the magistrate's order for production of the tax returns is clearly erroneous and contrary to the specific, controlling provisions of § 6103. Indeed, the order requires the Secretary to release taxpayer information outside the provisions of 6103, essentially commanding the commission of a federal felony crime.

        C.    **In Concluding that *Brady/Giglio* Entitles Desage to Production of the Tax Returns, the Magistrate's Order was Clearly Erroneous and Contrary to Both *Brady*'s Imputation Doctrine and Materiality Standard—with the Exception of the Frey/Hefetz Returns, the Prosecution Team is Not In Possession of the Tax Returns, and, Even if it Was, Assuming All Desage Alleges, The Tax Returns Would Not be Material Under *Brady***

Because the plain language and interpretive caselaw for § 6103 plainly rejects Desage's request, he is relegated to alleging an entitlement based only on *Brady/Giglio*. The first problem with this is that *Brady* is not a pretrial discovery device. The United States Supreme Court has noted that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *see also United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) ("We have often noted that *Brady* requests cannot be used as discovery devices."); *United States v. Quinn*, 123 F.3d 1415, 1421 (11th Cir. 1997) ("[T]he Supreme Court has made it clear that the *Brady* rule is not an evidentiary rule that grants broad discovery powers to a defendant and that '[t]here is no general constitutional right to

---

[12] 26 U.S.C. § 7213(a)(1) ("Federal employees and other persons.--It shall be unlawful for any officer or employee of the United States or any person described in section 6103(n) (or an officer or employee of any such person), or any former officer or employee, willfully to disclose to any person, except as authorized in this title, any return or return information (as defined in section 6103(b)). Any violation of this paragraph shall be a felony punishable upon conviction by a fine in any amount not exceeding $5,000, or imprisonment of not more than 5 years, or both, together with the costs of prosecution, and if such offense is committed by any officer or employee of the United States, he shall, in addition to any other punishment, be dismissed from office or discharged from employment upon conviction for such offense.").

24

discovery in a criminal case.'") (quoting *Weatherford*, *supra*)); *United States v. Jones*, 678 F. Supp. 1302, 1303 (S.D. Ohio 1988) ("The United States Court of Appeals for the Sixth Circuit has repeatedly stated that the *Brady* rule is not a discovery device and that it confers no pretrial rights or remedies." (citations omitted)). Thus, even if a piece of purported discovery could meet *Brady*'s standard for possession or materiality, that decision may not be relied upon for an order compelling pretrial discovery where Rule 16, the Jencks Act, the actual mechanical rules governing pretrial discovery, do not permit it. Nevertheless, assuming for purposes of argument that *Brady* could serve as a pretrial discovery mechanism, it does not do so under these circumstances where: (1) the Government is not even in imputed, constructive possession of the requested discovery; and (2) the discovery, even if it is all the defendant alleges, does not meet *Brady*'s materiality standard.

### 1) Excepting the Hefetz/Frey Returns, None of the Requested Tax Returns are Within the Government's Actual or Constructive Possession, Thus *Brady* is Not a Source for Compelling Their Production

*Brady* does not serve as a constitutional alternative for production of the tax returns that are prohibited from being produced under §6103, and thus not producible under Rule 16 or Jencks. The reason for this is simple: to constitute *Brady* material, the material sought must be in the actual or constructive (imputed) possession of the prosecution team. "The *Brady* rule requires prosecutors to learn of any favorable evidence known to other members of the 'prosecution team.'" *United States v. Gil*, 297 F.3d 93, 106 (2d Cir. 2002) (citing *Kyles v. Whitley*, 514 U.S. 419, 438–39, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). The magistrate's order was clearly erroneous and contrary to law because it inexplicably concluded the Government "concede[d] that it possesses the tax records Mr. Desage seeks[.]" ECF No. 121 at 4 n.1. In fact the Government had in its response expressly denied having possession of the taxpayer information. ECF No. 114 at 4:22-5:8. The undersigned AUSA recently investigated this issue, and after careful and specific discussion with the IRS-CID case agent, was able to confirm that the case agent, at one point very early in the investigation, pulled and reviewed

the IRS Integrated Data Retrieval System (IDRS) portfolios for Jacob Hefetz and Herb Frey, which contain, respectively, the 2005-2011 and 2009-2011 tax return information for each man.[13, 14] Thus, for purposes of *Brady*, that taxpayer information is deemed to be in the prosecution team's possession. The remainder of the scores of tax returns Desage seeks, however, is not in the Government's possession under *Brady* because no member of the prosecution team possesses them, and they are confidential under § 6103, which renders them not in the prosecution's possession.

An instructive case is *United States v. Lochmondy*, 890 F.2d 817, 823 (6th Cir. 1989), a drug prosecution, where the defendants appealed the district court's refusal, based on § 6103, to permit them to obtain, for impeachment purposes, a cooperating witness's income tax returns. Like the district court in *Recognition Equip. Inc.*, *supra*, the *Lochmondy* district court had at first granted the defense's motion for production of the tax returns, but upon the Government moving for reconsideration based on § 6103, the district court reversed itself and decided the returns were barred from production by § 6103. *Id.* at 824. The Sixth Circuit affirmed this decision on appeal noting that, because the returns had not been released pursuant to § 6103, they were not in the prosecution's possession for purposes of *Brady*:

> "…*Brady* does not apply to evidence not in the prosecutor's possession." []Here, as in *Bibby*, the prosecutor never had possession or knowledge of the income tax returns sought by the defendants. Since the prosecution never obtained disclosure of those returns, § 6103(i)(4) is inapplicable. The district court, therefore, properly reconsidered and rescinded its order requiring the IRS to produce the returns.
> *Id.* (quoting *United States v. Bibby*, 752 F.2d 1116 (6th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986).[15]

---

[13] She also accessed the Wage and Income Transcript covering 2006-2009 for Frey. A Wage and Income Transcript will contain information filed by third parties regarding a taxpayer's wages and income; it does not contain information that the taxpayer herself would file, i.e., it does not contain her statements about her wages and income. Desage has never requested this information, and the magistrate did not order its production.

[14] When the matter was being litigated before the magistrate, the Government's response stated that the prosecution team was not in possession of any of the requested tax returns. ECF No. 114 at 4:23-24.

[15] *See also Bibby*, 752 F.2d at 1124-1125 ("The defendants next argue that the trial judge erred in not requiring the government to produce the Internal Revenue Service's tax audit of Jack Camarda. According to them, this tax audit could have provided them with valuable impeachment evidence because it could have established a motive for Camarda to falsify his testimony. Kickbacks of the type Camarda described in his profit-sharing agreement with Bibby and Ayers

26

If they exist, the tax returns (besides the Frey/Hefetz returns) would be solely and exclusively in the possession of the civil arm of the IRS, which is not a member or part of the prosecution team merely based on the involvement of IRS-CID, IRS's criminal investigation arm. In rejecting a Rule 16 discovery request similar to Desage's here, Judge Lewis Kaplan of the Southern District of New York explained this distinction:

> Many, perhaps all, defendants seek an order compelling the government to disclose to defendants' civil audit files relating to all FLIP/OPIS and SOS transactions that are not in the possession of the prosecution team—the members of the United States Attorney's Office involved in this case and the IRS personnel in the Criminal Investigation Division. These materials are in the possession of the civil side of the IRS in locations dispersed throughout the country. There is no evidence that any member of the prosecution team has reviewed any of the requested materials.
>
> While the prosecution's disclosure obligation in some circumstances may extend to materials beyond the knowledge of the individual prosecutors assigned to a case, it does not extend to the collective knowledge of the entire United States government or even to the entire government agency concerned. To the contrary, "the prosecution is only obliged to disclose information known to others acting on the government's behalf in a particular case." The Court does not accept that the entire Internal Revenue Service is "acting on the government's behalf" in this case. In consequence, assuming without deciding that the moving defendants otherwise have satisfied the requirements of Fed.R.Crim.P. 16, they are not entitled to these documents.
>
> *United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006) (citing *United States v. Pelullo*, 399 F.3d 197, 218 (3d Cir.2005), *cert. denied*, 546 U.S. 1137, 126 S.Ct. 1141, 163 L.Ed.2d 999 (2006); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993)).

*See also United States v. Brodnik*, 710 F. Supp. 2d 526, 545 (S.D. W. Va. 2010) (in income tax

---

are deductible tax items. In general, a prosecutor is required, upon request, to give a defendant any exculpatory information the prosecutor may have which is material to guilt or innocence. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The *Brady* requirement has been extended to include evidence tending to impeach a government witness. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, the *Brady* requirement only applies to evidence which the prosecutor knew or should have known was exculpatory. *United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). Moreover, *Brady* does not apply to evidence not in the prosecutor's possession. *See United States v. Escobar*, 674 F.2d 469, 479 (5th Cir.1982); *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980). The purpose of *Brady* and its progeny is not to require the prosecutor to search out exculpatory evidence but rather to divulge whatever exculpatory evidence he already has. When, as here, the record shows that the prosecutor had never seen the tax audit, never had it in his possession, and did not know what it contained, *Brady* does not require that he obtain it and give it to the defense. If the defendants wanted the tax audit, the proper course was to seek it from the IRS itself.").

evasion prosecution, denying discovery of IRS material, and noting: "The fact that IRS agents participated in this investigation does not mean that the entire IRS is properly considered part of the prosecution team.").[16] The situation might be different if the civil arm of IRS was actively involved in this prosecution,[17] but that is not the case here where two IRS-CID special agents and a revenue agent are part of the prosecution team, but civil IRS, in whose possession the tax returns would likely be, is in no way involved and cannot be considered a part of the prosecution team for purposes of *Brady. See, e.g.*, United *States v. Pelullo*, 399 F.3d 197, 218 (3d Cir. 2005), *as amended* (2005) ("[T]hat other agents in the DOL participated in this investigation does not mean that the entire DOL is properly considered part of the prosecution team."), *cert. denied*, 546 U.S. 1137, 126 S. Ct. 1141, 163 L. Ed. 2d 999 (2006); *United States v. Wilmington Trust Corp.*, No. CR 15-23-RGA, 2016 WL 3749860, at *3 (D. Del. 2016) ("The entire Fed is not a member of the prosecution team merely because of the involvement of a small number of Fed-OIG special agents."); *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993) (FBI agents uninvolved in the prosecution of the individual defendants not part of prosecution team for *Brady* purposes). With the exception of the Frey/Hefetz tax return information then, *Brady* does not authorize production of the tax returns because they are not in the possession of the prosecution team, which categorically prevents them from being considered *Brady* material.

---

[16] *Cf. also United States v. Caro*, No. 08-20044-CR, 2011 WL 4625383, at *5 (S.D. Fla. 2011), *aff'd*, 589 F. App'x 449 (11th Cir. 2014) ("In addition, the Government argues that Defendants' broad sweep of various Government agencies and law enforcement units to infer knowledge of Shapiro's investigation is unavailing—only *Brady* and *Giglio* materials possessed by the "prosecution team" are required to be disclosed. In this case, the prosecution team consisted of AUSA Fernandez, DOJ attorney Steven Grimberg, two local police detectives and the IRS Agents, Rondon and Herrera. Pursuant to the statements and affidavits of AUSA Fernandez, Bustillo and Rondon, it is evident that no one on the prosecution team learned of the investigation and charges against Shapiro until 2010, long after the trial in this case ended." (citations omitted)).

[17] *Cf., e.g., United States v. Prokop*, No. 2:09-CR-00022-MMD, 2012 WL 2375001, at *2 (D. Nev. 2012) (determining prosecution team included entire IRS because both IRS-CID and IRS-Civil Investigation had participated in the criminal investigation and DOJ attorneys stated they had possession of taxpayer information).

**2) Even Assuming All That Desage Alleges, the Tax Returns Are Not Material Under *Brady* Because They are at Best Cumulative Impeachment Material Based on a Fact the Government Does Not Contest, Thus the Magistrate Clearly Erred in Misconstruing *Brady*'s Materiality Standard**

Assuming the tax returns were even in the Government's possession for purposes of *Brady*, they do not rise to the level of being material under *Brady*. Because Desage must rely upon *Brady* for his entitlement to pretrial production he must—in addition to showing the Government possesses the returns—also satisfy *Brady*'s higher standard for a showing of materiality. "The *Brady* standard for materiality is higher than Rule 16's, and its scope narrower." *United States v. Pac. Gas & Elec. Co.*, No. 14-CR-00175-TEH, 2016 WL 3185008, at *2 (N.D. Cal. 2016) (citing *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013)); *see also United States v. Conder*, 423 F.2d 904, 911 (6th Cir. 1970) ("[T]he disclosure required by Rule 16 is much broader than that required by the due process standards of *Brady*." (citing 1 Wright, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 254 (1969)), *cert. denied*, 400 U.S. 958, 91 S. Ct. 357, 27 L. Ed. 2d 267 (1970). The magistrate plainly misapplied the law in determining that a mere showing of "plausible" materiality meets the materiality standard under *Brady*. ECF No. 121 at 4:9-21. *Brady* requires an actual showing of materiality, not just a "plausible" theory that materiality might exist. Plausibility is not the standard; the standard is this: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985); *see also Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972) ("A finding of materiality of the evidence is required under *Brady*[]. A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury[.]'" (citing *Brady* and quoting *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217

(1959)). Moreover, the United States Supreme Court has made it clear that "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S. Ct. 2392, 2400, 49 L. Ed. 2d 342 (1976), *modf'd by United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985); *see also United States v. Croft*, 124 F.3d 1109, 1124 (9th Cir. 1997).[18] Thus, the magistrate's order was clearly erroneous and contrary to law because he failed to apply the correct materiality standard in determining *Brady* warranted production of the tax returns.

The Government's theory of investment fraud is that Desage, a prolific gambler, solicited investments from his victims and immediately used those funds to pay marker debts at casinos or to fund his lavish lifestyle by, for instance, buying cars and houses for his various girlfriends. ECF No. 59 at 4:1-20.[19] The evidence at trial will show Desage immediately used these investment funds for unauthorized purposes. There is no reasonable likelihood of the jury's credibility judgment being affected by evidence of Desage's victims not reporting as income periodic lulling payments (or payments throughout the preexisting relationships, which were unrelated to the fraud)—a factual point victim Richardson appears not to contest. Whether the victims reported as income payments from Desage hardly begins to vitiate his fraud and is at best a collateral attack on their credibility

---

[18] This also demonstrates how different *Brady* materiality is from Rule 16 materiality. *Cf. United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (to establish Rule 16 materiality, "a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense.").

[19] ("    C.    Desage concealed from investors the fact that he would use their investments to pay off gambling debts at various Las Vegas casinos, to pay back other investors to whom he owed money for their investments, to pay for luxury personal items for himself and others, ad to make payments to family members.

    D.    Within days of receiving investments of several million dollars from different investors, Desage transferred portions of these funds to Las Vegas casinos to satisfy gambling debts, and to pay other investors to make it appear that he intended to pay them back in full, when he well knew that these payments were made to induce the investors to make larger investments with him.

    E.    Between January 2005 and June 2012, Desage received approximately $190 million from investors, sent approximately $175 million to casinos for gambling purposes, and failed to repay his investors their principled and promised rates of return.").

based on allegedly filing a false income tax return. Collateral impeachment evidence is not material for purposes of *Brady/Giglio*. *Conley v. United States*, 415 F.3d 183, 189 (1st Cir. 2005) ("Suppressed impeachment evidence is immaterial under *Brady*…if the evidence is cumulative or impeaches on a collateral issue." (citing *United States v. Dumas*, 207 F.3d 11, 16 (1st Cir. 2000)). The magistrate failed to conduct this analysis or apply this law. But if he had, the proper application of the standard could only have led to a finding of a lack of materiality under *Brady*.[20]

And that is only one ground upon which the tax returns lack *Brady* materiality. Assuming the truth of all Desage alleges about the tax returns—that they would allow him to show his victims did not report his payments to them as income—the material is at best cumulative impeachment evidence. The material is cumulative because, in particular, victim Richardson does not deny that Desage at times made payments in the course of their dealings, and that these payments were not reported as income. In other words, Desage does not need tax returns to prove his payments went unreported as income. At best then, if the tax returns showed what Desage speculates they would show, they are not *Brady* material because the law is very clear that "…cumulative information is not material evidence under *Brady v. Maryland*, 373 U.S. 83 (1963)." *Rivers v. Borg*, 980 F.2d 738 (9th Cir. 1992); *see also United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir. 1988) ("Evidence that is merely cumulative is not material."). More specifically, cumulative impeachment material is not material under *Brady*. *United States v. Marashi*, 913 F.2d 724, 732 (9th Cir. 1990) ("merely cumulative impeachment evidence ... [is] not Brady material"); *Robbins v. Smith*, 411 F. App'x 37, 39 (9th Cir. 2010) ("With respect to the victim's rap sheet, any information to be gained would have

---

[20] Note also that the tax returns themselves, unless the witness denied something they contained, would never come into evidence and could not be used on cross-examination. Assuming all Desage alleges and speculates about, they are at best specific instances of untruthfulness, which cannot be proved by extrinsic evidence. Fed. R. Evid. 608(b) (providing that specific instances of witness conduct may not be proved by extrinsic evidence for purposes of attacking credibility or truthfulness, although may be inquired upon during cross examination); *see also, e.g., United States v. Green*, 648 F.2d 587, 596 (9th Cir. 1981).

been cumulative. Merely cumulative evidence does not satisfy the *Brady* materiality prong." (citing *Barker v. Fleming*, 423 F.3d 1085, 1096–97 (9th Cir. 2005)); *United States v. Marashi*, 913 F.2d 724, 732 (9th Cir. 1990) ("Well before trial, the government provided Marashi the transcript of Smith's July 18, 1985 statement to the IRS which contained a reference to patient ledger cards virtually identical to that in Agent Abrahamson's notes. In this light, the notes contained merely cumulative impeachment evidence and thus are not *Brady* material."). The magistrate clearly erred in concluding with virtually no analysis that the tax returns were material for purposes of *Brady*/*Giglio*.

Finally, another problem with Desage's ability to meet the *Brady* materiality standard is that the victims' testimony that the funds provided to Desage were investments— not loans so Desage could pay his millions of dollars in gambling debts, repay other investors, or support his girlfriends—is corroborated by other witnesses and in some instances written contracts. Thus, this is not an instance where a jury will be asked to rely on the uncorroborated assertions of victim-witnesses, which shows yet another independent defect in the magistrate's casual conclusion of *Brady* materiality. *See United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (materiality not shown "when the testimony of the witness is 'corroborated by other testimony[.]'" (quoting *United States v. Petrillo*, 821 F.2d 85, 89 (2d Cir. 1987)).  For these numerous reasons, even when the truth of all Desage alleges is assumed, his allegations fall far short of demonstrating materiality under *Brady*/*Giglio*. Thus, the magistrate's order was clearly erroneous and contrary to law.

### 3) The Tax Return Information is Also Not Material Under *Brady* Because Desage's Unspecified, Alleged Payments Do Not Constitute Income, Thus the Tax Returns Do Not Have the Impeachment Value He Alleges

A further defect in Desage and magistrate's description of the tax returns as *Brady* material is that it is not at all clear that Desage's payments had to be reported as income under the income tax laws. Therefore the failure to report payments as income would not even constitute impeachment

material. Desage's original motion, which fails to identify any specific payments, appears to refer to cash payments to the victims in partial satisfaction of money they loaned to him.[21] If true, the alleged cash payments are nothing more than the return of money that Desage borrowed (or, more correctly, stole) from them. There is no gain constituting income until an investment is paid in full. *Commissioner of IRS v. Liftin*, 317 F.2d. 234, 235 (4th Cir. 1963). Stated another way, only interest is taxable; the return of principal is not a taxable event that needs to be reported in a tax return.[22] IRS Publication 550, Investment Income and Expenses (2014) at 3. Thus, even if Desage made sizable cash payments to each of his victims in partial satisfaction of his debts to them, such payments are not "earned income" to the victims and would not need to be reported in their tax returns.

To the extent Desage believed that his alleged cash payments constituted income to his victims, surely he would have issued 1099 or 1099 INT statements to them for income or interest paid. Desage-issued 1099's would be the best (and likely only) proof that his payments constituted "earned income." But he fails to identify, describe or append any 1099 statements, yet another evidentiary defect in his motion. Additionally, it bears emphasizing that the victims are sophisticated businessmen with complex financial dealings. As a practical matter, evidence of the alleged cash payments will not be readily apparent from an examination of the tax return itself. There is no line item in the victims' tax returns which reads "Payments from Desage." Rather, determining whether funds were received, and how they were accounted for, would require a complete audit of each

---

[21] Importantly, neither Foonberg nor Vechery, two of the victims, state anything in their witness interviews about receiving cash payments from Desage. If Desage has information that they did, he neglected to address it in his motion, another failure of proof that should doom his motion.

[22] Assume, for example, that Desage borrowed $1 million dollars from one of his victims to purchase hand soap but, in fact, used this money to pay off gambling debts. Further assume that Desage subsequently borrowed $500,000 from a second victim under the same pretenses, but used the second investment to partially pay back Victim 1, a payment he made in cash. The $500,000 payment to Victim 1 is not income to Victim 1 and does not become income until it reflects interest on the money loaned. Victim 1 is not required to report the partial repayment of principal until he earns money on that loan.

return, including an extensive review of supporting documentation, including other, unrelated investments, and interviews with the victims CPA's and bookkeepers to understand how these investments were treated for tax purposes. In short, the returns sought are, standing alone, unlikely to bear the fruit the defendant claims they would.

In his motion, Desage comprehensively failed to specify which cash payments he made, to whom, when, or for what. Instead of properly denying the motion as a result of Desage's failure to make an adequate preliminary showing, the magistrate erroneously granted it, compounding his error by incorrectly holding that the unidentified cash payments constituted "earned income," ECF No. 121 at 1:15-16; 4:18-20, when they do not.[23] The tax returns sought do not contain impeachment evidence and are not favorable. Because the tax returns are not: (1) with exception of the Frey/Hefetz 2009-2011 returns, in the possession of the prosecution team; and (2) do not qualify as discoverable under *Brady*/*Giglio*'s materiality standard, the magistrate's order is clearly erroneous and contrary to law.

> **D.    The Magistrate's Order was Clearly Erroneous and a Manifest Abuse of Discretion Because it Failed to Even Individually Assess Desage's Fourteen Different Categories of Requested Tax Returns and Disregarded § 6103's Strong Confidentiality Protections by Failing to Even Consider Protective Orders, *In Camera* Review for Materiality, or Other Privacy/Confidentiality Safeguards**

Now putting aside the magistrate's erroneous conclusions that Rule 16 and *Brady* applied to the requested tax returns and served as a basis for ordering their production, the incredibly sweeping, overbroad, and summary order is also contrary to Congress's legislative establishment of the strong confidentiality of taxpayer returns and information. "Congress enacted section 6103 of the Internal Revenue Code to protect taxpayers' privacy and to prevent the misuse of the confidential

---

[23] The magistrate uses the phrase "earned income" inappropriately. It is a term of art defined as all taxable income and wages earned from working, including wages, salaries and net earnings from self-employment. Interest and dividends are not "earned income" as defined by the IRS. To the extent the Order rests on his characterization of the alleged payments as "earned income," this is another legal error that undermines his decision.

information obtained in the course of collecting taxes." *DiAndre v. United States*, 968 F.2d 1049, 1052 (10th Cir. 1992) (citing § 6103's legislative history), *cert. denied*, 507 U.S. 1029, 113 S. Ct. 1843, 123 L. Ed. 2d 468 (1993). Due to this sweeping, casual, and unlimited introduction into the public sphere of potentially as many as one hundred forty tax returns, the magistrate's order constitutes an abuse of discretion.

The magistrate ordered a decade's worth of tax returns when Desage's financial relationships with some of his victims do not even run through such a period. For example, victim Richardson's first investment with Desage was in 2011. He continued to invest into 2012, but not since then. Desage was arrested on these charges in July 2012, after which he is unlikely to have made any cash payments. Even if everything Desage has asserted is true there is no basis for disclosing Richardson's returns prior to 2011 or after 2012. Moreover, the magistrate failed to even require Desage to make a proffer as to what payments he made, to whom, and in what tax years. A further problem is that the order requires production of a decade's worth of tax returns for individuals and entities that are not victims, parties, or necessarily even witnesses when this case goes to trial.

While none of these tax returns should be provided to Desage, if they were, the order should have been confined to having the Government examine the tax returns for *Brady* material, and if there was any such material, provide a written summary of only that material to the defense.[24] Only that type of process would be consistent with Congress's strongly expressed concern and rule of confidentiality for taxpayer returns; and that is what other courts have done in this situation (where there was first some specifically demonstrable reason to believe *Brady* material was contained in a particular return). *See, e.g.*, *United States v. Stegman*, No. 2:14-20109-JAR, 2015 WL 926103, at *3

---

[24] This assumes of course that Desage can articulate with some specificity what is being looked for, i.e., he identifies the approximate dates, amounts, and forms of these alleged payments to each victim for whom he has specified an allegation of prior payments. At a minimum, that is required for such a review.

(D. Kan. 2015).[25] This assumes, however, that Desage has done something more than allege in conclusory, nonspecific fashion that the decade's worth of tax returns might possibly contain some (not necessarily *Brady* material) impeachment evidence. *Cf. Stegman*, *supra* (defendant was able to point to statement where witness admitted may have left reportable income item off of a specific return); *see also United States v. Mitchell*, 178 F.3d 904, 907 (7th Cir. 1999) ("A 'due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court.'" (quoting *United States v. Morris*, 957 F.2d 1391, 1403 (7th Cir.1992) (quoting *United States v. Navarro*, 737 F.2d 625, 631 (7th Cir. 1984))). To indiscriminately and publicly release possibly as many as 140 tax returns without such a vetting by the prosecutor, was a complete abuse of discretion.

If after that review it develops that some issues of disputed materiality might be contained in tax returns in the Government's possession—which in this case extends only to the 2009-2011 tax return information for Frey/Hefetz —the Court can always conduct an *in camera* review.  *See, e.g.*, *United States v. Lloyd*, 992 F.2d 348, 352 (D.C. Cir. 1993) (ordering remand to district court for *in camera* review of tax returns in government's possession under § 6103(h)(4)(D), and also noting that redaction of "plainly immaterial and especially sensitive" material in returns should be conducted), *rehearing denied*, 71 F.3d 408 (D.C. Cir. 1995). Desage is not, as a matter of right, however, entitled to demand that the Court conduct *in camera* review of the Frey/Hefetz returns. *United States v. Hernandez*, 31 F.3d 354, 361 (6th Cir. 1994) (absent some indication of misconduct by the government, the district court is not required to conduct an *in camera* review to verify

---

[25] ("In light of 'congressional policy favoring the confidentiality of returns and return information,' and because the Government disclosed to Defendant Stegman Allison Wells' statement that she "probably should have" reported a hiring bonus on her 2005 tax return, the Court denies without prejudice Defendant Stegman's motion to compel discovery of Allison Wells' tax returns. The Court reminds the Government, however, of its obligation to disclose any *Brady* and *Giglio* information it finds during its review of Ms. Wells' 2007 return. If the Government finds *Brady* or *Giglio* evidence, the Government shall provide the content of that evidence in narrative form to Defendant Stegman. If, at that point, Defendant Stegman feels she is entitled to the entire tax return, she may move the Court for an order to disclose the return." (footnote omitted)).

government's assertions as to materiality under *Brady*), *cert. denied*, 513 U.S. 912, 115 S. Ct. 285, 130 L. Ed. 2d 200 (1994). And he should be required to first identify specific payments, payment dates, and payees before the Government is even required to examine for *Brady* material the only returns in the prosecution team's possession, the Frey/Hefetz returns. Finally, even in a hypothetical case (different from this case) where it evolved that tax returns constituted discovery material that should be turned over, the Court should at a minimum impose a protective order to preserve as much confidentiality of the returns as possible. *See, e.g.*, *United States v. Larkin*, No. 15-CR-00010-SI-1, 2016 WL 771260, at *4 (N.D. Cal. 2016).[26] Because the order completely ignored even the potential of any of these safeguards, the magistrate manifestly abused his discretion.

## CONCLUSION

WHEREFORE, after consideration of the included facts, points, authorities, exhibits, and arguments, the United States respectfully requests that this Court vacate the magistrate's order and DENY Desage's motion for production of tax returns.

DATED this 12th day of August, 2016.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

//s//

PATRICK BURNS
Assistant United States Attorney

---

[26] ("To protect the confidentiality of the returns and to safeguard against the unnecessary disclosure of sensitive material, the government shall present the Court with a proposed protective order, approved by defendants as to form. Defense counsel must obtain permission from the Court prior to disclosing any of the 2009-2011 and 2013 return information at trial.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## ELECTRONIC CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am an employee of the United States Attorney's Office, District of Nevada, and that on this day an electronic copy of the foregoing **GOVERNMENT'S APPEAL OF MAGISTRATE'S ORDER (ECF No. 121) GRANTING DEFENDANT DESAGE'S MOTION FOR DISCOVERY OF TAX RETURNS (ECF No. 107)**was electronically served via Electronic Case Filing (ECF) on Counsel of Record.

Dated: August 12, 2016.

Patrick Burns_____
PATRICK BURNS
Assistant United States Attorney

38