1  **DAVID Z. CHESNOFF, ESQ.**
   **Nevada Bar No. 2292**
2  **RICHARD A. SCHONFELD**
   **Nevada Bar No. 6815**
3  **CHESNOFF & SCHONFELD**
   **520 South Fourth Street**
4  **Las Vegas, Nevada 89101**
   **Telephone: (702)384-5563**
5  **Attorneys for Victim**
   **WILLIAM RICHARDSON**
6
                  **UNITED STATES DISTRICT COURT**
7                       **DISTRICT OF NEVADA**

8  **UNITED STATES OF AMERICA**          )
                                         )     **2:13-CR-00039-JAD-VCF**
9              **Plaintiff,**            )
                                         )
10 **v.**                                )
                                         )
11 **RAMON DESAGE**                      )
                    **Defendant.**       )
12                                       )
   ─────────────────────────────────────)
13
            **CRIME VICTIM WILLIAM RICHARDSON'S SUPPLEMENTAL BRIEF**
14          **REGARDING OBJECTION TO MAGISTRATE'S ORDER (DKT 121)**

15         COMES NOW, crime victim, WILLIAM RICHARDSON, by and through his

16 undersigned attorneys, David Z. Chesnoff, Esq. and Richard A. Schonfeld, Esq., and hereby

17 submits his Supplemental Brief Regarding his Objection to the Magistrate's Order (Dkt 121).

18         Wherefore, premises considered, crime victim William Richardson respectfully

19 requests that this Honorable Court reverse the Magistrate Judge's Order (Dkt 121), requiring

20 that his tax returns be disclosed to Defendant Ramon Desage.

21

22

23

24

25

26

27

28                                        1

1    This Motion is made and based upon the papers and pleadings on file herein, the

2    attached Memorandum of Points and Authorities, attached exhibits, and any oral argument that

3    may be heard in this matter.

4    Dated this 12th day of August, 2016.

5    Respectfully Submitted:

6    **CHESNOFF & SCHONFELD**

7
     //s// David Z. Chesnoff
8    **DAVID Z. CHESNOFF, ESQ.**
     Nevada Bar No. 2292
9    **RICHARD A. SCHONFELD**
     Nevada Bar No. 6815
10   520 South Fourth Street
     Las Vegas, Nevada 89101
11   Telephone: (702)384-5563
     Attorneys for Victim
12   WILLIAM RICHARDSON

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                  2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND

In the case at bar, in or about April of 2011, Defendant Desage, who holds himself out as an international businessman, began soliciting victim William Richardson for funds. Desage had various phone conversations and personal meetings with Mr. Richardson wherein Desage fraudulently induced Mr. Richardson into providing him funds. Desage fraudulently misrepresented to Mr. Richardson that he would use the funds solely for business purposes. Specifically, Desage told Mr. Richardson that if he provided him money, Desage could purchase various goods and products and then resell these products at a substantial profit. Desage promised Mr. Richardson that he would receive a portion of the profit, in addition to the return of the initial capital. Justifiably relying on these misrepresentations, Mr. Richardson provided Desage with funds.

Mr. Richardson was comfortable investing with Desage because he knew Desage was a long-time Las Vegas resident who had substantial apparent wealth and had been seemingly successful in business. As a result, Mr. Richardson justifiably relied on Desage's representations.

During 2011 and 2012, Defendant Desage victimized and defrauded Mr. Richardson out of, of excess of $50 million. Currently, Desage owes Mr. Richardson approximately $30 million. Mr. Richardson has been identified as a victim, specifically "investor 4", as detailed in the indictment filed against Desage in this case.

On June 16, 2015, Desage filed a Motion for Discovery of Tax Returns. Dkt 107. Said motion sought tax returns from various victims, including Mr. Richardson. Significantly, the motion sought tax returns from victims from the years of 2005 through 2014, even though the indictment only references Mr. Richardson transacting with Desage in 2011 and 2012.

1    On July 16, 2015, the United States filed its Opposition to said motion. Dkt. 114. On July

2  28, 2015, Desage filed his reply.  Dkt. 115.  On August 13, 2015 Magistrate Judge Cam

3  Ferenbach issued an order compelling the government to disclose tax returns of the victims,

4  including Mr. Richardson's tax returns for the years of 2005 through 2014. Dkt 121.

5    Subsequent to the Magistrate Judge's Order, the government filed an appeal. *See* Docket

6  Number 127. Crime victim William Richard also filed a Motion for Joinder to the Government's

7  Objection to the Magistrate Judge's Order (Dkt 129), and also filed a Motion for Relief Under the

8  Crime Victim Rights Act (Dkt 128).

9    Mr. Richardson has standing to object to the production of his tax returns not only as a

10  privilege holder under 26 U.S.C. § 6103, but also as a crime victim under the Crime Victim

11  Rights Act (18 U.S.C. § 3771).

12    After a period of the parties stipulating to continue Desage's responses to said objections

13  and to Mr. Richardson's Motion for Relief Under the Crime Victim Rights Act, on July 22, 2016,

14  the government filed its Motion for Leave to File a Supplemental brief regarding its Objection to

15  the Magistrate Judge's Order. On July 27, 2016, Desage filed his Response, and on July 28, 2016,

16  the government filed its Reply.

17    On August 5, 2016, this Honorable Court entered an Order granting in part, and

18  denying in part, the government's Motion for Leave to File Supplement as to Ramon Desage (Dkt

19  174). See Docket Number 177.  The government was given until August 12, 2016 to file its

20  supplemental brief.

21    Accordingly, Mr. Richardson now joins the government's supplemental briefing as well

22  as files his own supplemental brief regarding the issue of whether the Magistrate Judge's Order

23  Violates 26 U.S.C. § 6103.

24

25

26

27

28

## II.    ARGUMENT

### THE MAGISTRATE JUDGE'S ORDER GRANTING DESAGE'S REQUEST FOR DISCLOSURE OF MR. RICHARDSON'S TAX RETURNS MUST BE REVERSED AS IT VIOLATES 26 U.S.C. 6103

Crime victim William Richardson incorporates by reference as though fully set forth herein the arguments raised in the government's objection to the Magistrate Judge's Order (Docket 127), as well the government's motion to file a supplemental brief (Docket 174). Mr. Richardson also incorporates by reference as though fully set forth herein his Motion for Joinder to the Government's Objection to the Magistrate Judge's Order (Dkt 129), and his Motion for Relief Under the Crime Victim Rights Act (Dkt 128).

Here, regarding the issue of whether the Magistrate Judge's Order violates 26 U.S.C. § 6103, it is clear that the Order must be reversed. Not only is the Order extremely flawed in the scope of production (as detailed in Mr. Richardson's original crime victim motion, Dkt 128), but the Order ignores the strictures of 26 U.S.C. 6103 which sets forth a statutory presumption that tax returns are confidential and privileged in nature. Moreover, it is well-settled that the rules governing the disclosure of tax returns and return information are to be strictly construed. *See, e.g.*, *Tierney v. Schweiker*, 718 F.2d 449, 455–56 (D.C.Cir.1983); *Olsen v. Egger*, 594 F.Supp. 644, 646–47 (S.D.N.Y.1984).

Tax returns and return information are confidential, 26 U.S.C. § 6103(a), but may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only under specific circumstances-

> (A) the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, ...;
> (B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;
> (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or
> (D) to the extent required by order of a court pursuant to section 3500 of title 18, United States Code or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due

consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.

26 U.S.C. § 6103(h)(4).

The first exception applies to the tax returns of a party who is the subject of the proceeding. Mr. Richardson is not a party to the proceeding, rather he is a victim involved only as a witness to the fraud. Two other exceptions apply to the tax returns of a party which relate to the resolution of an issue in the proceeding. Mr. Richardson's tax returns do not relate to any issue in the proceeding - they are sought only to impeach his future testimony as a witness to the fraud perpetrated by Desage.

Consequently, regarding these exceptions to the general rule of non-disclosure, only (D) is possibly applicable here. However, as discussed herein, said exception does not apply, and thus disclosure cannot be ordered.

**A.      The requested tax returns cannot be disclosed under Fed. R. Crim. P. 16 as they are not in the possession of the prosecution.**

Contrary to Desage's arguments in his previous motion, Mr. Richardson's tax returns cannot be disclosed in this case under Fed. R. Crim. P. 16 because they are not in the prosection's "possession, control or custody" as required for Rule 16.

Rule 16 limits "possession, control, or custody" of the government to that of the prosecution team. It is not co-extensive with other arms of the government. This is well-settled law. In *United States v Robertson*, ( E.D. Cal 1986), 634 F Supp 1020, affd without op (CA9 Cal) 815 F2d 714, cert. denied 484 U.S. 912, 98 L Ed 2d 215, 108 S. Ct. 258, the court held that tax returns and W–2 forms presumed to be in the possession and custody of the IRS' criminal investigation division, and those in the hands of an agent of that division, were not discoverable under Rule 16 of the Federal Rules of Criminal Procedure because they were not in the possession of the "government" within the meaning of that Rule.

In *Robertson*, the court observed that the scope of the term "government" in Rule 16(a)(1)(C) turns on whether the prosecution has access to the relevant evidence, because limiting

6

1 the meaning of "government" to the prosecution alone would unfairly allow the prosecution access

2 to documents without making them available to the defense. Furthermore, giving the term

3 "government" its broadest reading by expanding it to include all federal agencies would not only

4 wreak havoc, but also would give the defense access to information not readily available to the

5 prosecution. Accordingly, the documents in the hands of the IRS' criminal division and its agent

6 were not in the possession of the government, the court concluded, because the prosecution had

7 no ready access to them, due to the statutory restraints placed on the disclosure of tax return

8 information.

9      In the case of *United States v. Recognition Equipment Inc.*, 720 F.Supp. 13, 14

10 (D.D.C.1989), the government moved for reconsideration of an order granting defendants' motion

11 compelling disclosure of tax returns. On reconsideration, the district court held that the defendants

12 were not entitled to disclosure under Rule 16. Specifically, citing *Robertson*, the court stated:

13     [D]efendants' reliance on Rule 16 to obtain the tax returns is inapposite
because the United States attorney is not in possession of them. In *United*
14     *States v. Robertson*, 634 F.Supp. 1020 (E.D.Ca.1986), aff'd, 815 F.2d 714
(9th Cir.), cert. denied, 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (1987),
15     the Court analyzed the relationship between Rule 16 and 28 U.S.C. §
6103(h)(4) which provides for disclosure of tax returns or return information
16     in judicial and administrative tax proceedings. Like § 6103(i)(4)(A)(ii) in the
instant case, § 6103(h)(4) includes the provision that tax returns and tax
17     information may be disclosed "to the extent required by order of a court
pursuant to section 3500 of title 18, United States Code, or rule 16 of the
18     Federal Rules of Criminal Procedure...." 26 U.S.C. § 6103(h)(4)(D). The
Robertson Court noted that "[a]t first blush, subdivision (4)(D) suggests that
19     the court may order production of the tax returns from the IRS pursuant to
Rule 16 for use in a tax administration prosecution." 634 F.Supp. at 1027.
20     <u>However, the court recognized that subsection (h)(4) presupposes that the
prosecuting United States attorney already is in the possession of the tax</u>
21     <u>returns or return information and only then does subsection (h)(4)(D) permit
discovery under Rule 16.</u> Id. at 1028.

22

23     <u>This Court finds the relationship in the instant case between Rule 16 and §
6103(i)(4) identical to that involved in Robertson where, as discussed above,</u>
24     <u>subsection (i)(4)(A) presupposes that the tax returns and tax information at
issue are already in the possession of the government under subsection (i)(1)</u>
25     <u>in order for subsection (i)(4)(A)(ii) to apply.</u>

26 *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989) (affirming recision of district court

27 order requiring the IRS to produce tax returns) (emphasis added); *United States v. Bibby*, 752 F.2d

28        7

1  1116 (6th Cir.1985), cert. denied, 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986)

2  (affirming denial of production of an IRS tax audit of a government witness which the defendant

3  sought for impeachment purposes).

4      Likewise, in this case, the tax returns are not in the possession of the government's

5  prosecution team as the government has previously stated:

6          Additionally, the prosecution team (U.S. Attorney's Office and I.R.S. –
           Criminal Investigations) does not have the information the defendant seeks.
7          The tax returns (if any) for the individuals and entities identified are
           maintained by the Internal Revenue Service and their production would
8          depend upon an application (adequately supported) from the government to
           the court for permission for the IRS to release these documents to the U.S.
9          Attorney's Office. The defendant may wish to consider a subpoena directed
           to the individual victim witnesses or to the IRS directly.
10
    ECF No. 114 at 4:22-5:8; see also ECF No. 174, p. 5, fn. 5.
11
        Accordingly, because the IRS Civil division is not part of the "prosecution" team,
12
    disclosure of the requested tax returns is not governed by Rule 16.  Thus, the Magistrate Judge's
13
    Order must be reversed, as it failed to consider this important aspect of tax return confidentiality
14
    codified in 26 U.S.C. § 6103.
15
    **B.      Disclosure of the tax returns is also not required or proper under 18 U.S.C. 3500.**
16
        Desage improperly asserts that disclosure of the tax returns is proper under the Jencks Act.
17
    However, the Jencks Act, 18 U.S.C. § 3500, states that no statement or report in the possession
18
    of the United States which was made by a Government witness or prospective Government
19
    witness (other than the defendant) shall be the subject of discovery until the witness has testified
20
    on direct examination in the trial of the criminal case.  To be covered by the Jencks Act, the
21
    "statement" may be either 1) written and signed or otherwise adopted or approved by the witness;
22
    2) a recording or substantially verbatim transcription of an oral statement; or, 3) a statement the
23
    witness made to a grand jury.
24
        Witness statements, impeaching or not, are also similarly timed pursuant to the Jencks Act,
25
    18 U.S.C. § 3500. The Ninth Circuit has explicitly held that even Brady material, with respect to
26
    witness statements, is subject to the strictures of the Jencks Act. *United States v. Jones*, 612 F.2d
27

28                                              8

1     453, 454 (9th Cir. 1979).

2        Here, it is significant to note (and as recognized by the government), that the Magistrate

3 Judge's Order does not reference the Jencks Act all, much less as the reason the tax returns are

4 being ordered disclosed. Thus, any reference by Desage to the Jencks Act as grounds for

5 disclosure must be summarily rejected.

6        Even if the Magistrate Judge had cited the Jencks Act in his ruling, it must be noted that

7 courts have held that tax returns are not "statements" for purposes of the Jencks Act. *See,*

8 *e.g., United States v. Carrillo* (1977, CA5 Tex) 561 F2d 1125. The case of *United States v.*

9 *Carrillo* involved a prosecution for conspiracy to make and subscribe false individual and

10 partnership income tax returns and for filing false tax returns. There, the Fifth Circuit held that

11 the District Court's refusal to compel the government to produce the tax returns of the two major

12 government witnesses was not erroneous. The court further held that the tax returns were not

13 statements within the meaning of the Jencks Act unless they were "substantial verbatim recitals."

14 As such, tax returns are not "statements" under the Jencks Act.

15        In addition to being barred from disclosure under Rule 16, 18 U.S.C. 3500 also does

16 not warrant disclosure since the tax returns do not relate to the subject matter of Mr.

17 Richardson's testimony and, again, said returns are not in the possession of the "United

18 States."

19        As this Honorable Court well knows, the Jencks Act is very limited and narrow in

20 scope. For example, 18 U.S.C. § 3500 states in part:

21             (a) In any criminal prosecution brought by the United States, ***no statement***
***or report in the possession of the United States which was made by a***

22 ***Government witness or prospective Government witness (other than the***
***defendant) shall be the subject of subpoena, discovery, or inspection until***

23 ***said witness has testified on direct examination in the trial of the case***.

24             (b) ***After a witness called by the United States has testified on direct***
***examination***, the court shall, on motion of the defendant, order the United

25 States to produce any statement (as hereinafter defined) of the witness in the
possession of the United States ***which relates to the subject matter as to***

26 ***which the witness has testified***. If the entire contents of any such statement
relate to the subject matter of the testimony of the witness, the court shall

27

28                                    9

1    order it to be delivered directly to the defendant for his examination and use.

2    (emphasis added).

3    In addition, the Jencks Act specifically contemplates an *in camera* review as well as

4    excising of material which do not relate to the subject matter of the testimony (both of which were

5    not ordered by the Magistrate Judge). 18 U.S.C. § 3500(c) states in part:

> (c)   If the United States claims that any statement ordered to be produced
> under this section contains matter which does not relate to the subject matter
> of the testimony of the witness, the court shall order the United States to
> deliver such statement for the inspection of the court in camera. Upon such
> delivery the court shall excise the portions of such statement which do not
> relate to the subject matter of the testimony of the witness. With such
> material excised, the court shall then direct delivery of such statement to the
> defendant for his use.

A remedy is provided if material is improperly excised.

18 U.S.C. § 3500(c) further states:

> If, pursuant to such procedure, any portion of such statement is withheld from
> the defendant and the defendant objects to such withholding, and the trial is
> continued to an adjudication of the guilt of the defendant, the entire text of
> such statement shall be preserved by the United States and, in the event the
> defendant appeals, shall be made available to the appellate court for the
> purpose of determining the correctness of the ruling of the trial judge.
> Whenever any statement is delivered to a defendant pursuant to this section,
> the court in its discretion, upon application of said defendant, may recess
> proceedings in the trial for such time as it may determine to be reasonably
> required for the examination of such statement by said defendant and his
> preparation for its use in the trial.

Accordingly, it is abundantly clear that Mr. Richardson's tax returns from 2005-2014,

without redaction of non-relevant material cannot be disclosed to Defendant Desage by way of

the Jencks Act.

**C.      The requested tax returns are not *Brady* material and cannot be introduced as
extrinsic evidence.**

Here, Desage's request for tax returns from crime victim, William Richardson, must

also be denied in its totality as said tax returns are not material under *Brady*. "'[E]vidence is

material only if there is a reasonable probability that, had the evidence been disclosed to the

defense, the result of the proceeding would have been different." A 'reasonable probability' is

1    a probability sufficient to undermine confidence in the outcome.'" *Pennsylvania v. Ritchie*,

2    480 U.S. at 57 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

3        As the previously provided letter from Mr. Richardson's long-time accountant, David

4    Turner (attached hereto as Exhibit 1) as well as the Affidavit of experienced tax counsel, Charles

5    Rettig, Esq. (Exhibit 2), makes clear, Mr. Richardson was not required to report the payments

6    from Desage's entity, Beryt Promotions, LLC as they were not reportable income. *See id.*

7        Mr. Rettig's Affidavit states that "Payments received through a fraudulent investment

8    scheme are not for the use and forbearance of money, but rather such payments were made to

9    conceal the fraudulent misappropriation of the intended investment." *See id.* Moreover, the

10    Affidavit confirms that the "[t]he limited payments received by William Richardson in 2011 and

11    in 2012 should not properly be characterized as 'profits' or 'interest' since the underlying funds

12    were embezzled, not invested." *See id.*

13        In addition, Mr. Rettig's affidavit states that "[t]he overall amount of a theft loss in a

14    Ponzi scheme is generally the amount invested, less amounts received, if any, reduced by

15    reimbursements or recoveries, and reduced by claims as to which there is a reasonable prospect

16    of recovery." *See id.* Thus, the entire premise upon which Desage seeks the tax returns (that is to

17    impeach Mr. Richardson for failure to report "profits", "interest" or "earned income" from Desage

18    on his tax returns) is fatally flawed and could not be the subject of impeachment at trial.

19        It should be noted that even if a defendant makes the required showing of materiality under

20    *Brady*, the defendant "does not become entitled to direct access to the information to determine

21    for himself its materiality and favorability." *Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir. 1995)

22    (citing *Ritchie*). Rather, the defendant has the right "to have the information he has sufficiently

23    identified submitted to the trial court for *in camera* inspection and a properly reviewable judicial

24    determination made whether any portions meet the 'material' and 'favorable' requirements for

25    compulsory disclosure. *Id.* (citing *Ritchie*). Notwithstanding the foregoing, it is clear that

26    Desage's requests fall woefully short of even establishing a prima facie basis of materiality. As

27

28                          11

1  such, disclosure under *Brady* is also not warranted.

2      It should also be noted that under Federal Rule of Evidence 608(b):

3        Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to

4        attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of

5        the character for truthfulness or untruthfulness of:

6        (1) the witness; or

7        (2) another witness whose character the witness being cross-examined has testified about.

8

9        By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

10

11      As such, not only are the tax returns not discoverable, Desage is expressly precluded under

12  the Federal Rules of Evidence from introducing extrinsic evidence such as his tax returns to

13  impeach Mr. Richardson.

**III.    CONCLUSION**

14

15      In conclusion, it is abundantly clear that tax returns are presumed to be confidential and

16  privileged. Because they are privileged, disclosure may only occur if there is an exception under

17  26 U.S.C. 6103. Here, the privilege was created by statute and there is no applicable exception.

18  Disclosure under 18 U.S.C. § 3500 is not applicable, and the tax returns are not Brady material.

19  Accordingly, it is respectfully submitted that the Magistrate Judge's Order violates 26 U.S.C.

20  6103, and is being used by Desage to further victimize, Mr. Richardson who has never been

21  accused by the government of any malfeasance in this case. Thus, the Magistrate Judge's Order

22  must be reversed.

///

23

24

25

26

27

28

1      Wherefore, crime victim, William Richardson, respectfully requests that this Honorable

2  Court reverse the Magistrate Judge's Order (Dkt 121), requiring that his tax returns be disclosed

3  to Defendant Ramon Desage.

4      Dated this 12th day of August, 2016.

5                         Respectfully Submitted:

6

7                       //s// David Z. Chesnoff
                         **DAVID Z. CHESNOFF, ESQ.**

8                        Nevada Bar No. 2292
                        **RICHARD A. SCHONFELD**

9                        Nevada Bar No. 6815
                        **CHESNOFF & SCHONFELD**

10                     520 South Fourth Street
                       Las Vegas, Nevada 89101

11                     Attorneys for Victim William Richardson

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                          13

EXHIBIT 1

# TURNER, LOY & CO., LLC
### CERTIFIED PUBLIC ACCOUNTANTS

6502 South McCarran Boulevard, Suite D, Reno, Nevada 89509

David W. Turner
Pamela K. Loy

(775) 823-3777
Fax: (775) 823-3773

August 20, 2015

David Z. Chesnoff, Esquire
520 South Fourth Street
Las Vegas, NV 89101

Re:  William A. Richardson

Dear Mr. Chesnoff:

As per our telephone conversation, William Richardson has been my client for many years including the 2011 and 2012 years.  I am engaged to prepare his federal (and state) income tax returns and consult with him on other tax matters.

During 2011 and 2012 he invested in an entity known as Beryt Promotions, LLC.  For the 2011 year he received distributions in the amount of $2,798,468.50 that were identified as a return on investment (income).  In the middle of 2012, when we were preparing his 2011 federal income tax return, it was discovered that the investment in Beryt Promotions, LLC, was really an investment in what was similar to a "Ponzi Scheme".  As a result, we believed the distributions that had been received as a "return on investment" were really only a return of a portion of his actual investment.

Accordingly, we did not report the distributions on his 2011 federal income tax return. The distributions receive in 2012 did not distinguish between return on investment and return of investment.  Consistent with the treatment given the distributions received in 2011, and for the same reasons, the 2012 distributions were also treated as his capital investment being returned and were not reported on his federal income tax return as taxable income.

I believe that this treatment is consistent with guidance provided by the Internal Revenue Service in situations where, in other cases (Madoff for example), there have been "claw backs" of previously distributed "income" in similar situations, the IRS has allowed the taxpayers to eliminate the distributions from previously reported income since it was not really income (return on investment), but other investors money that was distributed and taxed.

Alternatively, the distributions were capital being returned to Mr. Richardson, as they did not exceed his "investment" amount.  Accordingly, for this additional reason it was not required of Mr. Richardson to include those amounts on his income tax return as it is not reportable income.

Member American Institute of Certified Public Accountants

David Z. Chesnoff, Esquire
August 20, 2015
Page 2

     Please contact me for any additional information that I might be able to provide in this matter.

                        Very truly yours,

                        David W. Turner

DWT:ak
Copy:
    William A. Richardson

EXHIBIT 2

## AFFIDAVIT OF CHARLES P. RETTIG

I, CHARLES P. RETTIG, hereby declare and state as follows:

1.    I have personal knowledge of the matters set forth in this Affidavit and, if called upon as a witness to do so, I could and would so testify.

2.    I am serving as tax counsel for William Richardson and have discussed Mr. Richardson's tax matters with him and with David W. Turner, C.P.A., his tax accountant and tax return preparer of the tax returns for calendar years 2011 and 2012.

3.    I am a principal in the law firm of Hochman, Salkin, Rettig, Toscher & Perez, P.C., a "tax boutique" law firm based in Beverly Hills, California specializing in federal and state tax controversies and tax litigation throughout the United States. I am a member of the State Bar of California, the State Bar of Hawaii and the State Bar of Arizona (Inactive). Since 1982, I have continuously engaged in the private practice of taxation law at Hochman, Salkin, Rettig, Toscher & Perez, P.C. (and its predecessor firm).

4.    I received my LL.M. (in Taxation) from the New York University School of Law in 1982, my J.D. degree from Pepperdine University School of Law (*cum laude*) in 1981 and my B.A. (in Economics) from the University of California, Los Angeles in 1978. I am a *Certified Specialist* both in Taxation Law and in Estate Planning, Trust & Probate Law by the State Bar of California, Board of Legal Specialization.

5.    I am a Past-Chair of the IRS Advisory Council (IRSAC); a Member of the Advisory Board of the California Franchise Tax Board; a Past-Member of the Advisory Council of the California State Board of Equalization. I am an Officer, elected Regent (Past-Chair, Nominating Committee) and elected Fellow of the American College of Tax Counsel (ACTC)(an honor reserved



for those at the top of their chosen profession). I am an Officer of the ABA Section of Taxation, a Past-Member of the Board of Trustees for the California CPA Education Foundation, on the Board of Advisors for the CCH Journal of Tax Practice and Procedure, and a Past-Chair of the Taxation Section for the State Bar of California.

6. I have personally reviewed the Criminal Complaint (the "Criminal Complaint") that was filed on or about June 28, 2012 in the matter of U.S. vs. Ramon Desage ("Desage"), et. al, Case No: 2:12-mj-441-PAL, alleging Desage engaged in a "Ponzi scheme in which he fraudulently solicited and received tens of millions of dollars from investors" based on his false representations "to each investor that he intends to use their investment to purchase products for resale at a substantial profit." The Complaint further alleges:

> "Instead of using these investments for legitimate business investments, as promised, DESAGE has largely used the investors' money to repay earlier investors, to cover gambling losses and to purchase luxury personal items for himself and others. DESAGE lulls investors and convinces them to make additional, and more lucrative investments, by making small periodic payments to them, but he never pays them back in full and never pays the rate of return he initially promised. Since 2005, DESAGE has obtained approximately $150 million from investors and currently owes his investors in excess of $75 million."

6. I have also personally reviewed (i) the Indictment that was filed on or about January 29, 2013, Case No: 2:13-cr-039-JAD-VCF against Desage for violations of 18 U.S.C. § 1343 (Wire Fraud); (ii) the Superseding Indictment that was filed on or about July 30, 2013 including charges of 18 U.S.C. § 1343 (Wire Fraud) and 26 U.S.C. § 7201 (Income Tax Evasion); and (iii) the Second Superseding Indictment that was filed on or about February 11, 2014 including charges of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. §1957 (Money Laundering) and 26



U.S.C. § 7201 (Income Tax Evasion).

7.     Based on my review of the Criminal Complaint, the foregoing Indictments and my discussions with William Richardson and David W. Turner, C.P.A., I am informed and believe that from May 2011 to May 31, 2012, William Richardson was fraudulently induced to transfer approximately $56,401,531 to an account at Bank of Nevada held in the name of Beryt Promotions, LLC, an entity controlled and used by Desage to facilitate his foregoing described fraudulent schemes. During this same time period, Desage or entities controlled by him made disbursements to Mr. Richardson in the amount of approximately $2,798,468.50 during calendar year 2011 and approximately $14,611,532 during calendar year 2012 for a total recovery of approximately $17,410,000. I am informed and believe that, as of December 31, 2012, the estimated overall net theft loss was approximately $37,701,531.50.

8.     I am informed and believe that William Richardson and Mr. Richardson's tax accountant / tax return preparer, David W. Turner, C.P.A. became aware of the filing of the Criminal Complaint on or about June 28, 2012 when it was filed (approximately four months before the October 15, 2012 extended filing deadline for Mr. Richardson's tax return for tax year 2011).I am further informed and believe that prior to the filing of the tax returns for calendar years 2011 and 2012, David W. Turner, C.P.A. was aware that William Richardson received payments from Desage, et. al. of approximately $2,798,468.50 during calendar year 2011 and approximately $14,611,532 during calendar year 2012.

9.     Payments received from Desage through a fraudulent investment scheme are not for the use and forbearance of money, but rather such payments were made to conceal the fraudulent misappropriation of the intended investment.

10.     The limited payments received by William Richardson in 2011 and in 2012 should

not properly be characterized or reported as "profits" or "interest" since the underlying funds were embezzled, not invested.

12.     The overall  amount of a theft loss in a Ponzi scheme is generally the amount invested, less amounts received, if any, reduced by reimbursements or recoveries, and reduced by claims as to which there is a reasonable prospect of recovery. As of the end of calendar year 2012, William Richardson incurred an estimated overall net theft loss of approximately $37,701,531.50. (Approximate amounts provided less amounts received).

13.     I am informed and believe that William Richardson relied upon David W. Turner, C.P.A. regarding any required tax return reporting relating to the foregoing amounts received from Desage, et. al, and, in my opinion, David W. Turner, C.P.A. gave proper advice regarding such matters and the filing of the tax returns for calendar years 2011 and 2012.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except as to those matters that are stated on information and belief, and as to such matters, I am informed and believe them to be true and correct.

Dated: August 09, 2016

CHARLES P. RETTIG

#6470832v1<iManDocs> -Affidavit of Rettig re Desage Loss

