# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No.: 2:13-cr-00039-JAD-VCF |
| Plaintiff | |
| v. | **Order Denying Emergency Motion for Release Pending Appeal** |
| Ramon Desage, et. al, | [ECF No. 397] |
| Defendants | |

Ramon Desage pled guilty to conspiring to defraud the United States and was sentenced to three years in prison for his more than $28 million tax underpayment.[1] On the eve of his self-surrender date, Desage hired new counsel, who filed an emergency motion to delay his incarceration while he pursues an appeal, despite having waived most of his appellate rights in his written plea agreement.[2] The government agreed to push Desage's surrender date out by another month so it could have a fair opportunity to respond to this eleventh-hour request.[3] Having considered this now fully briefed motion, I find that Desage has failed to show that his appeal is not for the purpose of delay and that it raises a substantial question of law or fact likely to result in relief, so I deny the motion.

## Discussion

A person convicted of a federal crime and sentenced to prison must be ordered detained pending appeal unless he demonstrates "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal, an order for a new trial, a non-

---

[1] ECF No. 285.
[2] ECF No. 397.
[3] ECF Nos. 401, 403.

custodial sentence, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."[4] As the Ninth Circuit has elaborated, "[a] 'substantial question' is one that is fairly debatable or fairly doubtful; it is one of more substance [than] would be necessary to a finding that it was not frivolous."[5]

Desage argues that he should remain at liberty pending appeal because he can raise "fairly debatable" issues about his restitution hearing.[6] Those issues developed at the end of a two-day evidentiary hearing on the amount of federal income tax that Desage had evaded. To understand how far below the "substantial question" mark those issues fall requires some history of the extensive sentencing proceedings that capped this six-year prosecution.

## A. Desage pled guilty and comprehensively waived his appeal rights.

Desage pleaded guilty under a written plea agreement to conspiracy to defraud the United States in violation of 18 U.S.C. § 371. In that plea agreement,[7] Desage admits that he conspired and agreed with his bookkeeper Gary Parkinson and tax-preparer Peter Akaragian "to cause fraudulent federal income tax returns to be filed" for himself and his entities for tax years 2006–09 "to avoid the taxation of portions of income" he "received and thus to defraud the Internal Revenue Service and the United States."[8] He explains that he knew his returns and supporting items were fraudulent because "they omitted payments" to him "that were taxable as

---

[4] 18 U.S.C. § 3143(b)(1)(B); *United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990) (noting that it is the moving party's burden to demonstrate "a substantial question").

[5] *Montoya*, 908 F.2d at 450 (quoting *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985)).

[6] ECF No. 397.

[7] ECF No. 285.

[8] *Id*. at 4, ¶ 1; *see also* ECF No. 301 at 20, 53 (evidentiary hearing transcript, day 1) (wherein defense expert Aloian describes the roles of Akaragian and Parkinson).

income and created certain false business expense deductions, thereby reducing [his] taxable income and tax due."[9] "These books and records reclassified" his "personal expenses"—like payments to his "female companions for cars, houses, and jewelry"; payments for his gambling debts and home improvements; purchases of luxury cars, real property, and personal gifts; and transfers among his various entities—to business expenses.[10]

**B.     The Court held a two-day evidentiary hearing on the tax loss/restitution amount.**

The parties stipulated in the plea agreement "that, prior to sentencing," the court would conduct "an evidentiary hearing on the tax loss/restitution figure to be used in sentencing" Desage "and imposing any restitution obligation."[11] They also agreed "to be bound by the Court's tax loss/restitution figure in arguing" Desage's offense-level calculation and sentence, and Desage waived all appeal and post-conviction rights except ineffective-assistance claims.[12] At that tax loss/restitution evidentiary hearing, which was held over two days, the government presented the testimony of IRS Revenue and Special Agents who established that Desage had underreported and underpaid his income tax by $28,221,767.[13] But Desage aimed to neutralize the impact of his plea-agreement admissions by arguing that he could have claimed tens of millions of dollars more in tax deductions that would have wiped out his entire tax deficiency. He supported that theory with the testimony of his CPA Michael Aloian, who theorized that

---

[9] ECF No. 285 at 5, ¶ 2.
[10] *Id.* at 5, ¶ 3.
[11] *Id.* at 6.
[12] *Id.* at 6, 14–15.
[13] *See* ECF No. 301 at 93–94.

3

Desage, a high-rolling gambler who often left casinos carrying large sums of cash, satisfied approximately $28 million in business expenses with cash, erasing that tax loss.[14]

## C. The Court declined to further extend the tax loss/restitution hearing.

At the end of the final day of that loss-amount hearing, Desage's attorneys announced that they needed yet another hearing day—to put themselves on the stand to testify about "certain exhibits" discussed during the preindictment negotiations they conducted on behalf of Desage.[15] This issue struck me as peripheral, and the idea of having Desage's attorneys put themselves on the stand to discuss negotiations raised significant ethical and evidentiary concerns, so I asked the attorneys to brief these issues.[16] Not until their reply brief did Desage's counsel suggest that they wanted to present the testimony of Desage, too.[17] Because the government stipulated to the admissibility of the exhibits that prompted defense counsel to want to take the stand, and because I believed the request to put up Desage was just a delay tactic in an already protracted case, I declined the request to further extend the tax-loss/restitution evidentiary hearing:

> Even if I were to find that it is proper for Desage's counsel to put themselves on the stand to authenticate documents and reveal the details of years-old settlement negotiations, I do not find that such testimony is material here in light of the fact that the government has stipulated to the admissibility of the exhibits. And the notion that anything that happened in the hearing has now necessitated that Desage himself testify is meritless. Both sides in this six-year-old prosecution were well aware of the government's loss calculation and that Mr. Aloian's response was to theorize that unaccounted-for cash in an amount roughly equal to the government's loss calculation was used to satisfy business expenses. Desage would have been the most natural witness to

---

[14] *See id*. at 46; ECF No. 313 at 302–04.

[15] ECF No. 313 at 118–119 (evidentiary hearing transcript, day 2). Before the hearing, both sides submitted witness lists. Defense counsel and Desage were not on either list. *See* ECF Nos. 296, 298.

[16] ECF No. 301 at 119–121.

[17] ECF No. 312.

4

> discuss those alleged cash payments, but at no time before or during these two days of hearings did the defense suggest that they intended to have Desage testify. This timing suggests only sandbagging and an attempt to further delay Desage's sentencing on the plea that he entered five months ago. So, the request to continue this tax-loss hearing to allow the defense to present additional witnesses is denied.[18]

I did, however, allow the parties to provide further briefing on the tax loss/restitution issue.[19]

After processing those two days of testimony, sifting through the hearing exhibits, and evaluating the parties' extensive briefing, I issued a written order adopting the government's position that Desage's loss amount for sentencing and restitution purposes was $28,221,767.[20] Desage moved for reconsideration.[21] Unpersuaded by his new argument, I denied that motion.[22]

**D.     Desage was given full opportunity for allocation at his sentencing hearing.**

Desage's final sentencing hearing on September 23, 2019, lasted more than an hour.[23] The court calculated and considered the sentencing guidelines, took into account the parties' sentencing memoranda, and received statements from people claiming to be victims of Desage's financial frauds.[24] It heard argument from counsel for the government (who asked for a downward variance to a 36-month sentence) and the defense (who argued he'd already been punished enough by the stigma of this criminal prosecution and his pretrial-release conditions

---

[18] ECF No. 316 at 2.

[19] *Id*. at 2–3.

[20] ECF No. 339.

[21] ECF No. 344.

[22] ECF No. 346.

[23] *See* minutes at ECF No. 350.

[24] *See generally* ECF No. 381 (reporter's transcript of 9/23/20 proceedings).

5

and asked for probation).[25] Desage was given a full opportunity for allocution; in taking it, he nearly recanted his guilt:

> **The Court:** . . . . Mr. Desage, this is your opportunity to speak to the Court directly and to tell me anything else that you think I should consider in deciding what sentence to give you. Is there anything else you would like to say, Mr. Desage?
> **The Defendant:** Yes. Yes, Your Honor. First of all, I apologize and I regret what I have done or somebody helped me to do it. But I ask for leniency so you give me the chance to pay back the government and the people that were my friend [sic] for 25 to 35 years. I did not defraud anybody nor I have the intention, and I ask you for your pardon and your mercy. And thank you.
> **The Court:** Thank you, sir.[26]

**E.   Desage has not shown that his appeal is raises a substantial question and is not for purpose of delay.**

Desage has failed to demonstrate—as he cannot establish on this record—that his appeal is anything but a frivolous delay tactic. His request for release pending appeal is premised on the appellate claim that the court denied Desage the right to allocute by denying defense counsel's last-minute request to extend the evidentiary hearing on the tax loss/restitution amount into a third day. Defense counsel claimed that they wanted that extra day to call themselves to the stand to testify about their negotiations with the IRS on Desage's behalf, and also to allow Desage to testify. In now suggesting that the denial of that request deprived Desage of his right to allocution as required by Federal Rule of Criminal Procedure 32, Desage conflates the right to an evidentiary hearing at sentencing (which doesn't exist) with the right to allocute (which does). The record establishes that Desage was afforded his allocution right as a matter of

---

[25] *See id.* at 9–21.

[26] *Id.* at 21.

incontrovertible fact. And even if it didn't, Desage's comprehensive appellate waiver prevents him from meeting his burden here.

### 1. *Desage was afforded his allocution right.*

Rule 32(i)(4)(A) of the Federal Rules of Criminal Procedure states that "the court must" allow defense counsel to speak on the defendant's behalf and "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."[27] "The rule only requires the court to allow the defendant and his attorney to speak" at sentencing, it does not require the court to permit testimony at sentencing.[28] "The right to allocution is the right to have your request for mercy factored into the sentencing decision."[29]

Desage was afforded his Rule 32 rights. One of his several attorneys argued on his behalf.[30] When counsel was done arguing, the court made it clear that Desage was being presented with his opportunity to allocute, explaining, "Mr. Desage, this is your opportunity to speak to the Court directly and to tell me anything else that you think I should consider in deciding what sentence to give you. Is there anything else you would like to say, Mr. Desage?"[31] Desage responded by asking for "leniency" and "mercy," and the court allowed him to speak until it was apparent that he had said all he wanted to.[32] This was precisely what Rule 32 required.

---

[27] Fed. R. Crim. P. 32(i)(4)(A)(ii).

[28] *United States v. Cruzado-Laureano*, 527 F.3d 231, 238 (1st Cir. 2008).

[29] *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1136 (10th Cir. 2017) (quoting *United States v. Barnes*, 948 F.2d 325, 329 (7th Cir. 1991)).

[30] ECF No. 381 at 15–21.

[31] *Id*. at 21.

[32] *Id*.

So Desage argues instead that the court's decision to deny his nine-months-earlier request to present additional testimony, including his own, at the loss-amount/restitution evidentiary hearing violated his Rule 32 allocution right. But the Ninth Circuit has long recognized that "[t]here is no general right to an evidentiary hearing at sentencing, and a district court has discretion to determine whether to hold such a hearing."[33] Where a fact relevant to sentencing is contested, the parties simply must "be given an adequate opportunity to present information to the court regarding that factor."[34]

Desage's opportunity to present information on the extent of his tax fraud was more than adequate. The government stipulated in the plea agreement to have the court conduct an evidentiary hearing on the tax-loss/restitution amount.[35] Both sides freely chose their witnesses for that hearing and submitted witness lists—Desage was not listed on them.[36] The court spent two days listening to the testimony from witnesses on those lists and poring over the detailed exhibits. The parties then prepared extensive briefing, followed by a round of reconsideration.

Courts have rejected Rule 32 violation claims with substantially less opportunity than the multilayered one that Desage was provided here. For example, in *United States v. Cruzado-Laureano*, the defendant offered nine witnesses on various topics including his innocence and the amount of restitution, but the court only permitted testimony about his character.[37] Rejecting his argument that the limitation on the number of witnesses he could call at sentencing violated his right to allocution under Rule 32, the First Circuit Court of Appeals reasoned that "the district

---

[33] *United States v. Real-Hernandez*, 90 F.3d 356, 362 (9th Cir. 1996) (internal citations omitted).
[34] U.S.S.G. § 6A1.3.
[35] ECF No. 285 at 6.
[36] *See* ECF Nos. 296, 298.
[37] *Cruzado-Laureano*, 527 F.3d at 238.

8

court was more than generous in giving [Cruzado-Laureano] an opportunity to comment on the appropriate sentence through witness testimony, his own statement, counsel's argument, and the supporting documents. He was entitled to no more."[38] No case that Desage offers even comes close to holding that Rule 32 is violated when a defendant is not permitted to testify about a contested sentencing issue but is later afforded the unfettered opportunity to address the court. In each case that Desage relies on, the court failed to even ask the defendant if he wanted to speak or otherwise deprived him of all opportunity to do so.[39] Because Desage was given an opportunity to allocute and the court's decision to disallow his testimony at the separate evidentiary hearing did not violate his rights, I cannot find that his appeal is not for the purpose of delay and that it raises a substantial question of law or fact.

### 2. *Desage expressly waived his right to this appeal.*

Even if the court's failure to hear Desage's late-disclosed testimony at the restitution hearing could be construed as a substantial appellate question, it would not warrant release because Desage's comprehensive appellate waiver makes it unlikely that his appeal will result in

---

[38] *Id.*; *see also United States v. Garcia-Solis*, 927 F.3d 308, 311–12 (5th Cir. 2019) (rejecting argument that sentencing court violated Rule 32(i) by refusing to allow defendant to testify at hearing to refute border-patrol officers' testimony in support of a sentencing enhancement, noting that defendant's attorney argued on his behalf, and the defendant "was given a full opportunity to allocute, during which he said nothing about the facts" related to the enhancement).

[39] *See* ECF No. 397 at 8 (citing *United States v. Daniels*, 760 F.3d 920, 923 (9th Cir. 2014) ("The Government . . . acknowledges that the district court did not personally ask Daniels whether he wanted to speak before sentencing him"); *United States v. Navarro-Flores*, 628 F.2d 1178, 1182 (9th Cir. 1980) (sentencing court failed "to inquire of Navarro whether he wished to make a statement"); *United States v. Sarno*, 73 F.3d 1470, 1503 (9th Cir. 1995) (finding that district court's admonition, "I don't want you speaking to the Court unless the Court asks you a question," deterred defendant from speaking freely during allocution); *United States v. Medrano*, 5 F.3d 1214, 1219 (9th Cir. 1993) ("Medrano, however, was not personally addressed by the court to see if he had anything to say before sentence was imposed, as required by Federal Rule of Criminal Procedure 32(a)(1)(C).")).

reversal, a new trial, or a change in his sentence as 18 U.S.C. § 3143 requires. In his written plea agreement, Desage unequivocally waived:

> (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court; (b) **the right to appeal the manner in which the Court determined that sentence** on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution.[40]

He "reserve[d] only the right to appeal any portion of the sentence that is an upward departure from the Sentencing Gudelines range determined by the Court,"[41] but the court did not upwardly depart in imposing Desage's sentence—it varied down.[42] Desage confirmed his understanding of, and consent to, these waivers at his plea hearing.[43]

The Ninth Circuit has routinely dismissed Rule 32-based appeals from defendants who executed appellate waivers similar to Desage's. In *United States v. Savage*, for example, the panel found that the defendant's waiver of "his right to appeal 'the manner in which his sentence was determined' . . . plainly encompasse[d]" Rule 32(i)(4) errors.[44] Desage's agreement to language similar to that in *Savage* makes *United States v. Petty*—on which Desage relies—inapposite. Petty waived "any right to further appeal," and government counsel in *Petty*

---

[40] ECF No. 285 at 14 (emphasis added).

[41] *Id*. at 15.

[42] ECF No. 381 at 36.

[43] ECF No. 380 at 31–32.

[44] *United States v. Savage*, 406 F. App'x 220, 221 (9th Cir. 2010) (unpublished), *cert. denied*, *Savage v. United States*, 565 U.S. 1058 (2011); *see also United States v. Nunez-Pompa*, 538 F. App'x 787, 787–88 (9th Cir. 2013) (unpublished) (dismissing appeal alleging violation of Rule 32(i)(4)(A)(ii) based on appeal waiver); *United States v. Tinoco*, 436 F. App'x 794, 795 (9th Cir. 2011) (unpublished) (same).

suggested at a hearing that the waiver left Petty's appellate issue open.[45]  The *Savage* panel found *Petty* materially distinguishable based on its waiver language and government counsel's concession, and so do I.[46]  Because Desage's appellate waiver encompasses the issues he raises in this motion and his appeal is likely to be dismissed on that basis, I cannot find that his appeal is "likely to result in" reversal, a new trial, or resentencing.[47]

**Conclusion**

IT IS THEREFORE ORDERED that Ramon Desage's Emergency Motion for Release Pending Appeal **[ECF No. 397] is DENIED.**  Desage must self-surrender to the Bureau of Prisons by February 6, 2020.

Dated: January 31, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[45] *United States v. Petty*, 80 F.3d 1384, 1387 (9th Cir. 1996).

[46] *Savage*, 406 F. App'x. at 221 ("Here, in contrast to *Petty*, the language of the agreement refers to the manner in which the sentence was determined.  It thus expressly covers the errors that Savage seeks to raise on appeal.  Furthermore, in contrast to *Petty*, nothing in the parties' statements or conduct contradicts the language of the agreement.").

[47] Because Desage has not demonstrated a substantial question under 18 U.S.C. § 3143(b)(1)(B), I need not and do not reach the additional flight-or-danger inquiry under 18 U.S.C. § 3143(b)(1)(B).  Were I to do so, however, I could not find by clear and convincing evidence that Desage is not likely to flee or pose a danger to the safety of any other person or the community if released pending appeal.  Desage is a man of substantial means and a Lebanese citizen, and the United States does not have an extradition treaty with Lebanon.  *See* ECF No. 404 at 19.  Plus, Desage's history of financial convictions and the length of this tax-fraud scheme demonstrates that he presents a danger to the community.