**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America, | Case No.: 2:13-cr-00039-JAD-VCF |
| Plaintiff | |
| v. | **Order Denying Emergency Motion for Temporary Compassionate Release and Modification of Sentence to Permit Temporary Home Confinement** |
| Ramon Desage, | |
| Defendant | [ECF No. 425] |

Ramon Desage pled guilty to conspiring to defraud the United States and was sentenced in September 2019 to three years in prison for his more than $28 million tax underpayment.[1] Desage delayed his self-surrender to the Bureau of Prisons with unsuccessful last-minute motions for bail pending appeal,[2] but he was ultimately detained on a state-court warrant on new state charges and is now at the Nevada Southern Detention Center awaiting designation to his BOP facility.[3]  Desage now moves for a "temporary" compassionate release to home confinement under 18 U.S.C. § 3582(c)(1)(A), arguing that his age and health conditions make him more susceptible to the COVID-19 virus.[4]  The government opposes the motion.[5]  Because I find that Desage has failed to show that such relief is available or warranted, I deny his motion.

---

[1] ECF No. 352 (9/25/2020 judgment).

[2] ECF No. 406 (district court denial);  *U.S. v. Desage*, Case No. 19-10348, DktEntry 16 (2/13/2020 order denying motion for bail pending appeal).

[3] And further pretrial-release revocation proceedings.

[4] ECF No. 425 ("Mr. Desage requests modification of his 36-month sentence, ordering his immediate and temporary release to home confinement until the COVID-19 risk in the United States has subsided.").

[5] ECF No. 428.

**Discussion**

A sentencing court's ability to modify a sentence once imposed is seriously limited.[6]  The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018,[7] is an exception to this limitation.  It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has asked the Bureau of Prisons (BOP) to bring such a motion on his behalf and exhausted all administrative rights to appeal the BOP's denial of that request.[8]  The court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[9]

There is a foundational problem with the nature of Desage's request: he has not demonstrated that the compassionate-release statute gives a sentencing court the ability to "temporarily" release a defendant to home confinement to ride out a pandemic.[10]  The statute's express language empowers the court only to "reduce the term of imprisonment" if the requirements of compassionate release are satisfied.[11]  The United States Supreme Court has held that identical language in § 3582(c)(2) does not "authorize . . . resentencing," it merely gives "courts the power to 'reduce' an otherwise final sentence in circumstances specified by the

---

[6] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[7] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[8] 18 U.S.C. § 3582(c)(1)(A)(i).

[9] *Id.*

[10] Desage also has not exhausted his administrative remedies by making this request to the BOP. 18 U.S.C. § 3582(c)(1)(A).  Because I find that Desage's request must be denied on its merits, I assume without deciding that his exhaustion obligation was waived or excused, *see* ECF No. 425 at 8–10, and I address the merits directly.

[11] *Id.*

Commission."[12]  Even if the statute permitted the court to essentially grant Desage a furlough until the pandemic risks subside,[13] or if I construe his motion (as suggested in his reply[14]) as one to reduce his sentence, Desage has not demonstrated that compassionate release is warranted.

Although § 3582(c)(1)(A) does not define "extraordinary and compelling circumstances," the U.S. Sentencing Commission has identified four categories of situations that may qualify: serious medical conditions, advanced age, family circumstances, and a catch-all "other reasons."[15]  Desage contends that, as a 69-year-old man with "diabetes, obesity, and heart problems,"[16] he falls into the medical-condition category.  The Sentencing Commission finds extraordinary and compelling reasons under the medical-condition category when the defendant has (1) a terminal illness or (2) a physical, mental, functional, or cognitive impairment "that substantially diminishes" his ability "to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."[17]  A terminal illness is further defined as "a serious and advanced illness with an end of life trajectory," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."[18]  Desage makes no attempt to suggest that his health conditions put him in either the terminal-illness or unable-to-provide-self-care category.  Instead, he argues that

---

[12] *Dillon v. United States*, 560 U.S. 817, 825 (2010).

[13] The furlough power rests with the BOP.  *See* 18 U.S.C. § 3622(a)(6); *United States v. Roberts*, 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020) ("the decision of whether to grant . . . a furlough under Section 3622 is committed to sole discretion of the BOP") (collecting cases).

[14] ECF No. 429 at 6.

[15] U.S.S.G. § 1B1.13, application note 1(A).

[16] ECF No. 425 at 10.

[17] *Id.*

[18] *Id*.

his conditions put him at great risk of contracting or becoming gravely ill from COVID-19, and being "confined to a holding facility where social distancing is difficult, if not impossible" limits his ability "to properly protect himself."[19]  He also suggests that the totality of his circumstances dictates compassionate release under the "other reasons" catch-all category.[20]

These are not extraordinary and compelling circumstances for compassionate release. The medical conditions that Desage cites are the very same ones that he claimed at sentencing merited a probationary sentence.[21]  Although I took those conditions into consideration in determining his sentence, I found that "the Bureau of Prisons is fully capable of accommodating and managing those concerns."[22]  The record does not reflect that the BOP cannot continue to accommodate and manage Desage's health concerns, even in the face of this pandemic.  Indeed, it appears that special accommodations have already been provided.

The government has indicated that it "confirmed with the United States Marshals Service that, because he is an insulin-dependent diabetic, Desage has already been placed in his own 'at risk' isolation unit, which limits his exposure to other inmates and staff."[23]  The government has also shown that the NSDC has put in place a detailed plan to avoid the spread of the virus to its population.[24]  Although it has now been reported that a new detainee arrived from out of state with some COVID-19 symptoms, NSDC enacted its Emergency Response Plan, the detainee was isolated, everyone transported with him was immediately quarantined, and Desage was never in

---

[19] *Id*. at 11.

[20] ECF No. 429 at 2.

[21] ECF No. 348 at 7.

[22] ECF No. 381 at 33, lines 6–11 (transcript of sentencing hearing).

[23] ECF No. 428 at 14.

[24] *Id*. at 10–12.

contact with or housed in the same unit.[25]  There is no evidence that if detainees become infected, NSDC cannot isolate and treat those detainees, either internally or with outside help. Of course, there is no guarantee that Desage will not contract COVID-19 at NSDC, but there is also no guarantee that Desage would remain virus-free if he were released.[26]

A sentence reduction for Desage is also unjustified under the § 3553(a) factors.  His 36-month sentence was already a significant discount from the 60-month guideline range,[27] based on a variance and a negotiated agreement that the government would recommend a 36-month sentence.[28]  But a non-custodial sentence was not warranted when I entered judgment seven months ago—or now.  As I explained at sentencing, Desage's lenient probationary sentences for prior offenses did not deter his significant criminal conduct in this case:

> I also note that this is not Mr. Desage's first conviction, not even his first federal conviction.  He has prior federal convictions for illegal corporate political contributions and failing to report transportation of U.S. currency in excess of $10,000.  He received probationary sentences for both convictions, and that leniency does not appear to have deterred this much more substantial felony conduct here.  Indeed, Mr. Desage was still on probation for the more recent of these offenses when he began committing the offense of conviction here.

---

[25] ECF No. 430 (government supplement).

[26] *See, e.g.*, *United States v. Feiling*, 2020 WL 1821457, at *8 (E.D. Va. Apr. 10, 2020) ("As these numbers demonstrate, COVID-19 presents an equal, if not greater, threat to Defendant even if he were released on home confinement, and although Defendant argues that home confinement would allow him to better mitigate his exposure to COVID-19, the same can be said of keeping Defendant in prison, where the BOP has already taken steps to isolate prison facilities from internal and external sources of the coronavirus.").

[27] Based on a level 25 and criminal history category of III, the range was 70-87 months, but it was statutorily capped at 60 months.  18 U.S.C. § 371; U.S.S.G. § 5G1.1(a).

[28] *See* ECF No. 381 at 36 ("I vary down to get to that sentence based in part on the government's recommendation for this sentence as negotiated in the plea agreement by the parties who were in the best position to know the strength, weaknesses, risks, and benefits of resolving this case without trial, to balance the other 3553(a) factors with the desire to get the debt repaid, and to recognize the cooperation that Mr. Desage and his counsel early in this case provided, and also the limitations that Mr. Desage has been under for the several-year life of this prosecution.").

. . .

> An appropriate sentence here must take into account the fact that
> probationary sentences for Mr. Desage's prior federal convictions
> failed to deter this conduct, that tax evasion is a serious crime and
> victimizes the entire American public, that the dollar amount of
> this offense [$28,221,767] is staggering, and that Mr. Desage's
> fraud persisted over several years.[29]

And Desage has only just begun serving his sentence.[30]

The risks that Desage's release would present also militate against it. As I explained when denying his motion for release pending appeal:

> I could not find by clear and convincing evidence that Desage is
> not likely to flee or pose a danger to the safety of any other person
> or the community if released pending appeal. Desage is a man of
> substantial means and a Lebanese citizen, and the United States
> does not have an extradition treaty with Lebanon. See ECF No.
> 404 at 19. Plus, Desage's history of financial convictions and the
> length of this tax-fraud scheme demonstrates that he presents a
> danger to the community.[31]

Thus, although the COVID-19 pandemic is undeniably grave and its impacts on every aspect of American life are unprecedented, I cannot conclude that it presents extraordinary and compelling reasons for Desage's release.

Finally, Desage has not presented a constitutional basis to grant this relief. He argues that, unless he's released, "he is going to be exposed to a life-threatening virus," and that "would certainly be cruel and unusual punishment."[32] This hyperbole is based on the assertion that "the

---

[29] Id. at 33–34.

[30] His renewed self-surrender date was February 20, 2020, ECF No. 410, but he was arrested on a state-court warrant on February 12, 2020. See ECF No. 411, ¶ 1.

[31] ECF No. 406 at 11, n.47.

[32] ECF No. 425 at 16.

6

protections from COVID-19 for inmates are insufficient, whether for the jail population as a whole or for particularly at-risk individuals"[33] and opinions about prison populations and practices generally.[34]  The information that the government has provided specifically about NSDC's COVID-19 plan, procedures, and practices generally—and for Desage personally—demonstrates that NSDC is taking precautions to protect Desage and is actively responding to COVID-19 challenges as they evolve.  Because he has not shown deliberate indifference to his health or safety,[35] Desage's constitutional arguments fail.

### Conclusion

IT IS THEREFORE ORDERED that Ramon Desage's Emergency Motion for Temporary Compassionate Release and Modification of Sentence to Permit Temporary Home Confinement **[ECF No. 425] is DENIED.**

Dated: April 17, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[33] *Id*. at 17.

[34] ECF No. 425-5.

[35] The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  To establish a violation of these duties, a prisoner must demonstrate deliberate indifference to a serious threat to his safety or health.  *Id*. at 834.